United States District Court
Middle District Tennessee

DOC NO
REC'D/FILED

2017 JUN 12 AM 9:06

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

) Craig Cunningham
) Plaintiff, Pro-se
)
) v.  CIVIL ACTION NO. 16-v-761
)
) Michael Montes, Tollfreezone.com, Inc., Mydataguys.com, LLC,
PODmusicgear.com, Inc., Tollfreezone.com, Inc., dba Docauditor.com,
Tollfreezone.com, Inc., dba mobile trackme, Emailmyvmail.com, Inc.
)       John/Jane Doe 1-10
)       Defendants.

### Plaintiff's Response in Opposition to the Defendant's Motion to Set Aside and Motion to extend the time for filing responsive pleadings

1. The Plaintiff responds in opposition to the Defendant's Motion to Set aside and Motion to extend time for filing responsive pleadings

### General Objection to Standing for the Corporate Defendants

2. The Defendants motions and all pleadings filed on behalf of the corporate entities are all improper, not considered by the court, and should be stricken from the record. The Plaintiff objects to the filings of documents 12-20 and 22 to the extent that they are filed on behalf of the corporate defendants. The corporate defendants lack standing to defend themselves in this case.

3. None of the defendant corporations are in good standing with their respective states, and have not been in good standing for some 4-5 years prior to the filing of this lawsuit.

4. All pleadings on the respective behalfs of the corporations are in violation of FRCP rule 17(b)(2), which governs the capacity to sue or be sued and defend themselves in court, which is goverend by the laws under which it was organized.

5. As these corporations are not in good standing in their respective states, the corporations lack the capacity to defend themselves in court and thus any pleadings filed on their behalf are improper.

6. As evidence of the corporations respective status, for Tollfreezone.com, Inc., the Plaintiff submits a print out from the California Secretary of State's website, for

1

Tollfreezone.com, Inc., showing the status of *"FTB SUSPENDED"* and the agent for service of process *"Resigned on 4/16/2012"* indicating that the corporation has not been in good standing with the state of California for the past 5 years.[1]

7. In California, the Supreme Court of California has interpreted sections 23301 and 23302 of the Revenue and Taxation Code to bar a corporation from prosecuting, defending, or appealing an action during the time that it is suspended for failure to pay taxes.[2] At no time in the past 5 years has the corporation Tollfreezone.com, Inc., been in good standing or not suspended by the State of California, and the defendant has not taken any action to revive the corporation to date. As such, Tollfreezone.com, Inc., is unable to defend or appeal any claims in this case.

8. California Appeals courts have held that *"a suspended corporation may not prosecute or defend an action in a California court."*[3] *"Nor may a suspended corporation appeal from an adverse judgment"*[4] and that *"The plain language of the Revenue and Taxation code section 23301 "expressly deprives the corporation of all corporate powers, rights, and privileges"*[5]

9. Additionally, the 9th Circuit COA has similarly ruled that, "under California law, a delinquent corporation whose powers have been suspended "may not bring suit and may not defend a legal action." *United States v. 2.61 Acres of Land,* 791 F.2d 666, 668 (9th Cir.1985)"[6]

10. Additionally, the state of California imposes a criminal penalty on attorney's that seek to exercise the powers, rights, and privileges of a suspended corporation, to include defending or prosecuting claims, under section 19719 of the California Revenue and Taxation code of a fine not less than $250 and imprisonment not exceeding 1 year. Sanctions against attorney's that have engaged in litigation on behalf of a suspended corporation were upheld by a California Appeals court, which noted *"The rule is clear that a corporation suspended for nonpayment of taxes may not defend itself in litigation"* and the appeals court ruled that *"the trial*

---

[1]See Exhibit A

[2]Peacock Hill Assoc v Peacock Lagoon Contr., Co., 8 Cal 3d 369 ,371 (1972)

[3](Ransome-Crummey Co. v. Superior Court (1922) 188 Cal. 393, 396-397, 205 P. 446; Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp. (1957) 155 Cal.App.2d 46, 50-51, 317 P.2d 649.)

[4](Boyle v. Lakeview Creamery Co. (1937) 9 Cal.2d 16, 20-21, 68 P.2d 968; Gar-Lo, Inc. v. Prudential Sav. & Loan Assn. (1974) 41 Cal.App.3d 242, 245, 116 Cal.Rptr. 389).

[5]Timberline, Inc., v Jaisinghani (1997) 54 Cal App. 4th 1361

[6]Cited in Southern California Darts Ass'n v Zaffina 762 F.3d 921 (2014)

*court did not abuse its discretion in determining that the law firm in representing the corporatin had acted in bad faith by pursuing litigation activities while it's client was suspended*"[7]

11. For Mydataguys.com, LLC, a Nevada corporation, shows the status of *"REVOKED"* as of 12/20/2014, indicating the corporation has not been in good standing with the state of Nevada since 2014.[8]

12. Emailmyvmail.com, Inc. similarly shows a *"Revoked"* status going back to 1/12/2015, according to the Secretary of State of Nevada.[9]

13. Pursuant to Nev. Rev. Stat. § 86.274(2) and In re Krause, 546 F.3d 8 1070 (9th Cir. 2008), the Nevada corporations lost the capacity to sue or defend suit when their status was revoked by the state of Nevada. To date, the corporations are still not in good standing and have not been revived by the defedants.

14. Similarly, for PODmusicgear.com, Inc., a Delaware corporation. According to the Delaware Secretary of State, the corporation is not in good standing and shows the status of *"Void, AR's, or Tax deliquent"* and shows back taxes owed of at least $23,025 as of March 1, 2012. More than 5 years has passed since this corporation was in good standing and indicating no required annual report has been filed or taxes paid.[10]

15. According to Delaware law, Delaware code Annotated title 8, section 278 and courts interpreting this law, a corporation that is dissolved or void may have a 3 year term to wind up its affairs, which may include filing suit or being sued.[11] In this case, however, the corporation has continued to operate and more than 3 years have passed, so, PODmuicgear.com, Inc., lack any standing to defend the suit pursuant to FRCP rule 17 as the corporation is void and has remained so for the past 5 years.

16. In conclusion, none of the LLC or incorporated defendants were in good standing in their respective state during the timeframe in which the calls happened or during the pendency of this case. Cousnel for the defendants is quite likely

---

[7]Palm Valley Home Owners v Design MTC, 85 Cal. App. 4th 553, 559 (2000)

[8]See Exhibit B

[9]See Exhibit C

[10]See Exhibit D

[11]*City Investing Co. Liquidating Trust v. Continental Cas. Co.*, 624 A.2d 1191, 1195 (Del. 1993) and *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, (10th Cir. 1989)

3

breaking California law and ethical practice for which he may be disbarred and incarcerated by representing Tollfreezone.com, Inc., and at a minimum sanctioned for by the court. None of the corporations have standing to defend themselves in this case, and as such all pleadings filed on their behalf are improper and should not be considered by the court.

17. The Defendants are purposefully not maintaining the corporations in good status while continuing to operate and do business through them to evade service and to give the initial appearance that the corporations are out of business. The Plaintiff notes that Tollfreezone.com, Inc's corporate charter was revoked and registered agent resigned shortly after a regulatory lawsuit was filed by the Attorney General of Missouri in 2012.[12]

18. The reason that Tollfreezone.com, Inc., ceased remaining in good standing in California in 2012 likely has to do with the fact that the Attorney General of Missouri in 2012 sued Tollfreezone.com, Inc., and obtained a judgment of more than $73,000 against the company for illegal telemarketing. Neither Montes, nor and Tollfreezone.com, Inc. responded to the lawsuit. Undeterred, Montes through Tollfreezone.com, Inc., continued to make illegal calls, which garnered the attention of the Mississippi Public Service Commission in 2015 that levied a $440,000 fine for violations of the state's No-call law[13]. Neither Montes, nor Tollfreezone.com, Inc., responded to the regulatory action.

**The court should not overturn the previous entry of default in this case.**

19. Although the 7th Circuit may support a preference of deciding a case on the merits, but this is not an absolute rule, particularly when a defendant knowingly ignores a lawsuit and evades service.

20. The case cited Sun Bd., of Trs. of the Univ. of Ill., 473 F.3 799, 811 (7th Cir. 2007) hardly supports reversal of default under the circumstances. In the Sun Board case, the default was granted under far different circumstances, when a defendant was sanctioned by the penalty of default after multiple discovery disputes, at least 3 motions for sanctions, and finally the court granting sanctions in the form of defaulting the defendants. This is significanttly distinctive from the current case before the court, where you simply have a defendant who was informed of a lawsuit by a deputy and thumbed his nose at the court and the Plaintiff challenging the Plaintiff to *"Hunt him down"*

---

[12] 12SL-CC00837 State of Missouri ex Rel v Tollfreezone.com, Inc. and see Exhibit F

[13] See Exhibit G

21. Trial on the merits may be preferred, but it is hardly required, and the Defendants in this case, assuming they even have standing to contest, were informed of the lawsuit, consciously ignored it, and challenged the Plaintiff to *"hunt them down"* indicating their desire to evade service, instead of challenging the Plaintiff on the merits of the case. If the defendants really wanted to have a trial on the merits,with full participation of the parties, they should have thouht of that before challenging the Plaintiff to *"hunt them down"*. Default is the quite appropriate remedy when one party decides refuses to participate in the litigation.

**No good cause exists to overturn a default pursuant to FRCP 55(c)**

22. The Defendants had adequate notice of this current lawsuit back in November 30, 2016, when the St. Croix county deputy attempted to serve the Defendants and even called Defendant Montes. Instead of providing another address for service, obtaining a lawyer at the time, or responding to the court, Montes stated the Plaintiff would have to *"Hunt him down"*, according to the sworn testimony of Zackary Henricks, who attempted to serve Montes.

23. In the Defendant's affidavit, he admits in sworn testimony that he was called by a deputy attempting to serve him with a copy of the lawsuit. In paragraph 2 of his Declaration, he states that in late November 2016, he spoke with a St. Croix County Sheriff's deputy who was attempting to serve a lawsuit upon him.

24. Defendant Montes now claims he thought that the deputy was serving a lawsuit related to a lawsuit in the Middle District of Tennessee, which is Cunningham v Shoutpoint, 3:16-cv-00222. This assertion rings a bit hollow, by a simple review of the record in Cunningham v Shoutpoint. If as Montes claims were true that he thought the Plaintiff's lawsuit was related to the Shoutpoint case, in November 2016, his actions fail to support this assertion.

25. In both the Tennessee case and the Wisconsin case, despite having full knowledge of the pending lawsuits for more than 6 months, Montes has done nothing to defend himself or his respective corporations. The record shows in the Tennessee action no filing, motion, pleading, or any action taken in response in Cunningham v Shoutpoint by or on behalf of Defendant Montes, despite having knowledge of both lawsuits for more than 6 months.[14] In fact, a motion for default is pending before the Tennessee court as well.

26. If Montes had really thought that the deputy was calling about the Tennessee action, any reasonable person would have filed an answer, pleading, contacted an attorney, or done something to defend the Tennessee action back in November or

---

[14] Exhibit E

December 2016, if his statement is to be believed. The factual record shows no such actions by Montes to date.

27. Furthermore, allegedly getting confused about a lawsuit when you are telling the other party to *"hunt you down"* is hardly good cause for overturning a default. Any confusion could have been cleared up by simply accepting service and not evading the lawsuit, checking PACER, or even a google search. This statement of *"hunt me down"* by Montes is clear evidence of his intent to evade the lawsuit, and getting caught after attempting to evade service of the lawsuit is not good cause for not responding and getting defaulted.

28. The case cited, **Cracco v Vitran Express, Inc.,** 559 F. 3d, 625, 631 (7th Cir., 2009) is hardly support for overturning a default under these circumstances. In Cracco, the court vacated a default judgment when there was mixup in service with the registered agent and the lawsuit being forwarded to employees that apparently did not understand the significance of the paperwork.

29. Under those circumstances in Cracco, a late response may be excusable, but I doubt the court would have been so lenient had the summons and complaint been delivered to the CEO of Vitran and the CEO replied *"You are going to have to hunt me down!"* and then the company was found in default 6 months after service was attempted. In this case, Montes, the owner and corporate officer, clearly understood the significance of the documents and was purposefully evading service of them.

30. In fact, in the actual analysis in the Cracco case, the court noted in evaluating "good cause" for the default *"Vitran has shown good cause for the lateness of its answer, it did not willfully ignore the pending litigation, but rather failed to respond to the summons and complaint through inadvertence."* and *"Although Vitran should have taken measures to ensure that service of process on its registered aent was forwarded to the appropriate employee, there is no evidence it acted willfully when it failed to respond to Mr. Cracco's complaint."*

31. Taking that analysis and applying it to the current circumstances, there is a stark difference between the actions of Montes and Vitran. In the case of Montes, he was the correct person, he was informed by multiple parties of the lawsuit and served via publication as well. Montes willfully ignored the pending litigation in both Tennessee and Wisconsin until after a default was applied against him. There is evidence Montes acted willfully, by his statement to the Sheriff that the Plaintiff would have to *"hunt him down"*. Service via publication was completed on March 9, 2017 and Montes waited past April 17 when the default was entered against him until June 1st to hire a lawyer to make an appearance and attempt to

defend the case after default was entered against him, nearly 3 months after being served via publication and more than 6 months after Montes was notified by the deputy.

32. Finally, the Defendants complain that the Plaintiff's violated the court's order by submitting proofs of service 46 days after the court's order and not within 45 days. Pursuant to FRCP 6(d), the Plaintiff had 3 extra days for mailing as the Plaintiff receives notices through the mail and not ECF, so the Plaintiff's response was delivered within the requisite timeframe. At worst, this is a harmless error and still shows substantial compliance with the court's order, as opposed to telling someone to "hunt me down" and then evading service for 6 months.

### The Defendant took an unreasonably long time to correct the default

33. The fact of the matter is that more than 6 months ago, Montes was informed about this lawsuit apparently by multiple sources, including the St. Croix County Sheriff and he waited well beyond the statutory time alloted to defend the lawsuit.

34. 6 months is an unreasonably long timeframe, and Montes makes no allegation that he was out of the country, incapacitated, incarcerated, or otherwise unable to defend the lawsuit due to circumstances beyond his control.

35. In fact, by stating that the Plaintiff should "hunt him down", Montes clearly demonstrated that he had constructive knowledge of the lawsuit and chose to wait for the Plaintiff to hunt him down instead of answering the lawsuit within 21 days.

36. Even after service via publication was completed, more than 21 days passed, and the defendant still refused to answer the complaint or defend the action. In fact, 3 months passed before Montes filed any sort of response in the case after service via publication was complete. This is an unreasonable delay without any sort of compelling reason, such as being incarcerated, in the hospital, or out of the country.

### No meritorious defense exists or has been alleged

37. The Defendants attempt to claim a lack of personal jurisdiction, but this is fatally flawed by their own actions. By answering the lawsuit, they waived any challenge to personal jurisdiction. An answer was filed on June 1, 2017 and a motion to dismiss was filed afterwards. The proper procedure is to file a special appearance for the purpose of contesting personal jurisdiction, but by filing an answer, the Defendants waived any objections to personal jurisdiction, pursuant to FRCP 12(h)(1).

38. Furthermore, Montes admits that he owns a rental property in his affidavit, which constitutes "transacting businesss", for the purpose of establishing personal jurisdiction. Montes owns real estate, pays taxes, and receives mail in the county of St. Croix.

39. In their motion the Defendants to not suggest a meritorious defense, but merely state the functions of Tollfreezone.com, Inc., and how the entity places automated telephone calls, which the Plaintiff alleges. Admitting to the complained of activity does not constitute a meritorious defense.

40. The Defendants have failed to properly assert that any meritorious defense exists or is being alleged.

### The Damages sought by the Plaintiff are not unreasonable or any reason to overturn the default

41. The Damages sought by the Plaintiff are not disproportionate to the wrong alleged, and the Defendant has not acted in good faith in their conduct this far.

42. First, by challenging the Plaintiff to hunt him down and getting caught, the Defendant has failed to display any evidence of good faith conduct in this case.

43. In Charvat v NMP, LLC the 6th Circuit court of appeals held that under the TCPA, a defendant could be held liable for $3,000 per call. The damages are not disproportionate, or out of line with what Congress intended or beyond what the 6th Circuit and multiple district courts have determined to be appropriate.

44. The damages are relative to the number of calls documented by the Plaintiff.

### CONCLUSION

45. In summary, the Plaintiff, challenges the ability of the corporate defendants to even be represented or defend themselves in the action.

46. The Plaintiff also has shown that neither Montes, nor the respective corporations should have the defaults overturned. Montes was clearly aware of the importance of the lawsuit, and deliberately ignored it challenging the Plaintiff to "hunt him down" and when he was caught and served via publication with a default judgment pending against him, only then did he decide to finally participate in this action. Montes has failed to demonstrate good cause for overturning the default judgment and his actions and statements actually run counter to any sort of relief from the court.

Respectfully submitted,

*[signature]*

Craig Cunningham, Plaintiff, Pro-se, June 9th 2017

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, Tn 37211

615-348-1977