UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CRAIG CUNNINGHAM,

        Plaintiff,
v.

MICHAEL MONTES, Tollfreezone.com, Inc.,
Mydataguys.com, LLC, Podmusicgear.com, Inc.,
Tollfreezone.com, Inc., dba Docauditor.com,
Tollfreezone.com, Inc., dba Mobile Trackme,
Emailmyvmail.Com, Inc., and John and Jane Does 1-10,

        Defendants.

Case No. 16-cv-761

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY
POST-JUDGMENT COLLECTION ACTIONS PENDING APPEAL**

---

On July 18, 2017, the Court entered a default judgment against Defendants based upon an order for alternate service by publication. Defendants subsequently appealed the entry of judgment. Defendants request the Court stay the collection activities of the Plaintiff pending appeal.

The standard under Fed. R. Civ. P. 62(c) for granting a stay pending appeal is the same as the standard for granting a preliminary injunction. *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). A court considers the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other. *Id.* A stay is "necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits. The goal is to minimize the costs of error." *Id.* The court applies a "sliding scale" to these factors. *Id.* The greater the moving party's likelihood of success on the merits, the less

heavily the balance of harm must weigh in its favor. *Id.* In the present matter, each of these three factors weighs in favor of staying the Plaintiff's collection activities pending resolution of the appeal by the Seventh Circuit Court of Appeals.

    A. <u>Defendants Have Strong Arguments on Appeal</u>.

While Defendants do not expect the Court to determine its July 2017 decision to enter judgment was made in error, Defendants believe strong arguments exist that the entry of the default judgment may be reversed on appeal. The entry of the default judgment was based on the Court permitting Plaintiff to serve Defendants by publication in Somerset, Wisconsin. (Dckt. 3, ¶¶ 5, 6, 13.) The order for alternate service was permitted after a sheriff's deputy left his business card on one occasion at the Somerset address and engaged in a single long distance telephone call with Michael Montes. (*Id.*) These meager attempts at personal service did not comport with the requirements of Wis. Stat. § 801.11 (1)(a-c) to permit Plaintiff to obtain an order for alternate service by publication. *See* Fed. R. Civ. P. 4(e)(1)(service of summons to be accomplished by means permitted under state's laws governing service of process).

Under Wis. Stat. § 801.11(1)(a), a plaintiff must first attempt to have the defendants personally served. Courts have explained that a plaintiff must exercise "reasonable diligence" in attempting personal service. *Salas v. Wis. Dep't of Corrs.*, 429 F. Supp. 2d 1056, 1071-72 (W.D. Wis. 2006). If personal service is unobtainable, a plaintiff must attempt to leave the summons and complaint with a family member over the age of fourteen or with an adult residing at the dwelling. Wis. Stat. § 801.11(1)(b). It is essential that a plaintiff "first exercise reasonable diligence to serve the defendant in [the] two preferred ways" prior to seeking service by publication. *Salas*, 429 F. Supp. 2d at 1071-72. The attempts made by Plaintiff did not meet this standard to permit Plaintiff to receive an order allowing alternate service by publication.

Plaintiff also did not seek an order for alternate service in good faith. The "reasonable diligence" standard required Plaintiff to pursue "any leads or information reasonably calculated to make personal service possible." *Id.* at 1072. When a plaintiff possesses information that could result in successful personal service, a plaintiff is obligated to follow such leads. *West v. West*, 82 Wis. 2d 158, 166-67, 262 N.W.2d 87, 90-91 (1978). At the time Plaintiff sought an order for alternate service by publication, he was aware of Montes' home address in San Juan Capistrano, California. (Dckt. 31, Ex. B, ¶ 11-12.) In 2016 he had alleged in a lawsuit in Tennessee that the California address was Montes' home address. (*Id.*) However, Plaintiff never undertook any efforts to personally serve Defendants at this address in either the present lawsuit or the Tennessee lawsuit prior to seeking an order for service by publication. (Dckt. 31, Ex. A, p. 8.) Under these circumstances, the Court should not have entered a default judgment based upon an order for alternate service by publication.

Additionally, the Court erred in denying Defendants' Motion to Set Aside the Entry of Default. In finding no good cause to set aside the default, the Court focused heavily upon Montes' refusal during a telephone call with a deputy to provide his current address. However, Montes had explained that the single phone call was "confusing" and he harbored "concerns during the phone call whether the call was real and whether I was speaking with a sheriff's deputy from Wisconsin." (Dckt. 29, ¶ 8.) The deputy's own statements suggested the conversation was likely confusing on his end as well. The "certificate of no found" completed by the deputy and submitted by the Plaintiff to the Court in seeking an order for alternate service referenced the attempted service of an "Amended Complaint" (Dckt. 3, Attachment 3). However, there was no amended complaint in the present lawsuit; Plaintiff filed an amended complaint in the lawsuit in Tennessee where he impleaded Montes. (Dckt. 31, Ex. A, p. 3.) These

3

statements suggest the deputy may also have been confused about what pleadings he was discussing with Montes. The Court gave Montes' statement its harshest interpretation to find that Montes was evading service and had no good faith basis to set aside the default. However, such a statement could occur in the context of a telephone conversation in which the recipient doubted the legitimacy of the call and was being pressured to provide a home address. (Dckt. 29, ¶ 8.) Under such circumstances, it is conceivable such a statement could be uttered without the person having any actual intent to obstruct the judicial process.

Moreover, there is no question that once Montes became aware of the lawsuit in May 2017, he took prompt action to join the lawsuit and assert his meritorious defenses against the claims alleged by the Plaintiff. Under such circumstances, an appeals court could find the entry of a default judgment totaling $176,450 is disproportionate to the offense committed by the Defendants and is inconsistent with the liberal application of the standards of Rule 55(c) in favoring a trial on the merits. *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 868 (7th Cir. 2007) (The "sanctions" imposed by the district court should "fit the offense"); *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989) (courts should apply a liberal pleading standard for motions under Rule 55(c)).

      B.    The Likelihood of Irreparable Harm Favors Granting a Stay on Post-Judgment Collection Activities.

There is a real danger that if the entry of a default judgment is reversed on appeal, any monies obtained by the Plaintiff during post-judgment collection activities will not be returned. Until very recently, the Plaintiff had acted in a *pro se* capacity in this legal action. He is an individual citizen with no restrictions to keep him from using any funds collected while the appeal of the judgment is pending. He is not an officer of the court or a large corporation who could be expected to show restraint or have funds available to repay amounts collected if the

judgment is overturned on appeal. These factors justify entering a stay on any collection activities pending the outcome of the present appeal.

The necessity of the entry of a stay is further justified by the recent actions of Plaintiff's new legal counsel. At the July 2017 hearing, Plaintiff identified a Wells Fargo bank account belonging to Defendants holding over $60,000. (Dckt. 34.) The Court ordered this account frozen but did not order the funds to be turned over to the Plaintiff. (Dckt. 34, 39.) Plaintiff's newly retained legal counsel recently submitted a garnishment to Wells Fargo for these funds. The fact that over $60,000 of Defendants' funds could disappear while the judgment is on appeal justifies the entry of a stay on the post-judgment collection activities.

C. The Public Interest Favors The Entry of a Stay

The present judgment is on appeal to the Seventh Circuit Court of Appeals. The public interest and public policy should favor a cessation of collection activities until the appeal has definitively resolved the liability of the Defendants. This relief is especially warranted where the judgment was entered by default and no adjudication on the merits had occurred.

D. Conclusion

For the reasons stated above, Defendants respectfully request the Court enter a stay on post-judgment collection activities, including the recently issued garnishments, in the present lawsuit pending resolution of the appeal.

Alternatively, in the event the Court is not inclined to enter a stay of post-judgment activities, Defendants request the Court order any funds obtained through post-judgment collection activities be held in trust pending the outcome of the appeal.

Dated this 17th day of November, 2017.

                           AXLEY BRYNELSON, LLP

                           *s/ Kevin D. Trost*
                           Kevin D. Trost, State Bar No. 1028231
                           Attorneys for Defendants
                           P.O. Box 1767
                           Madison, WI 53701-1767
                           Tel: (608) 257-5661/Fax: (608) 257-5444
                           E-mail: ktrost@axley.com