UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * *

CRAIG CUNNINGHAM,

        Plaintiff,

-vs-                             Case No. 16-CV-761-JDP

MICHAEL MONTES,              Madison, Wisconsin
TOLLFREEZONE.COM, INC.,    July 18, 2017
MYDATAGUYS.COM, LLC,       8:08 a.m.
PODMUSICGEAR.COM, INC.,
EMAILMYVMAIL.COM, INC.,
and JOHN/JANE DOE 1-10,

        Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF DEFAULT HEARING
HELD BEFORE THE HONORABLE JAMES D. PETERSON,

APPEARANCES:

For the Plaintiff:
        BY:  CRAIG CUNNINGHAM, pro se

For the Defendant:
        Axley Brynelson
        BY:  KEVIN TROST
        2 East Mifflin Street, Ste. 200
        Madison, Wisconsin  53703

Lynette Swenson   RMR, CRR, CRC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 420
Madison, Wisconsin  53703

 1          (Proceedings called to order.)

 2          THE CLERK:  Case No. 16-CV-761.  *Craig*

 3  *Cunningham v. Michael Montes*, et al. called for a default

 4  hearing.  May we have the appearances, please.

 5          MR. CUNNINGHAM:  I'm Craig Cunningham, the

 6  plaintiff.

 7          THE COURT:  Good morning, Mr. Cunningham.

 8          MR. CUNNINGHAM:  Morning, Your Honor.

 9          MR. TROST:  Good morning.  Kevin Trost appearing

10  for the defense.

11          THE COURT:  Mr. Trost, good morning to you.

12          MR. TROST:  Good morning, Your Honor.

13          THE COURT:  Okay.  So you can correct me if I'm

14  wrong, but I think the way we left this was that I had

15  determined that service had been properly made.  I had

16  some questions about whether personal jurisdiction over

17  the defendants was appropriate and so I asked Mr. Montes

18  to submit to me an affidavit with some other materials

19  with information that would go to the question of

20  personal jurisdiction.  And so I guess I have a couple of

21  questions about the affidavit materials that Mr. Trost

22  can address perhaps and then I'll find out if

23  Mr. Cunningham finds any of the materials that were

24  submitted to be informative at all.

25          First, so the property in Somerset is, in kind of

1  common sense terms, really is owned by Mr. Montes and his

2  wife, although it's held in trust.  They're the settlers

3  and the beneficiaries of the trust; is that right?

4          MR. TROST:  Yeah, I think that's how they

5  answered the --

6          THE COURT:  Yeah.  Now, let me ask this:  Who's

7  the trustee of the trust?  Do you know that?  I didn't

8  specifically ask that.

9          MR. TROST:  I do not personally know.

10          THE COURT:  Okay.  And Mr. Montes didn't tell

11  you?

12          MR. TROST:  No.

13          THE COURT:  And what do you know about the

14  business?  Now, he identifies it as his wife running the

15  event business.

16          MR. TROST:  Right.  That's how he described it

17  to me as well, that his wife runs this event business.

18  It's kind of a rural farm setting and they rent it out

19  for weddings or parties, that type of thing.

20          THE COURT:  All right.

21          MR. TROST:  And his wife does the catering for

22  it.

23          THE COURT:  Okay.  So really he then supplies

24  the real estate that's used for the business.

25          MR. TROST:  Well, I think it's, you know, the

4

1   trust is regards both of them.

2         THE COURT:  Yeah.  So they own it, but he is one

3   of the owners of the real estate that's provided for this

4   business.  Where does he stay when they live -- when they

5   are in Wisconsin?  Did he tell you that?

6         MR. TROST:  I believe they stay at the farmhouse

7   that is on the property.

8         THE COURT:  Okay.  All right.  Mr. Cunningham,

9   you tell me if you find anything informative in the -- I

10  will tell you this:  I took a very quick look at the

11  massive Facebook posts.  I think they're in there

12  because -- and you can clarify this for me.  My

13  understanding is that the Facebook information is what

14  led you to the Somerset, Wisconsin, address for

15  Mr. Montes; is that right?

16        MR. CUNNINGHAM:  That's right in part, Your

17  Honor.  It's tieing Montes down to the Somerset property.

18  I know he has two houses, one in California and one in

19  Wisconsin.  I know he splits time there.  But to say on

20  this date or from this time frame to this time frame I

21  was in Wisconsin, I was definitely in Wisconsin, that's

22  kind of a different thing, you know, as opposed to saying

23  well, I'm here or there from various times.  So that was

24  part of the motivation with that.

25        It did --

1    THE COURT:  How did you find out that he had the

2    California house?

3    MR. CUNNINGHAM:  Your Honor, I've been doing

4    research on Mike Montes for over a year.  I've been in

5    contact with other litigants that have tried to sue him,

6    tried to serve him at the San Juan, Capistrano address;

7    spoken with private investigators who have gone to the

8    Capistrano address.  I have an affidavit from them.  I

9    know for a fact, for example, that the San Juan,

10   Capistrano address in California is listed on Vacation

11   Rental by Owner right now.  So if you want to take a week

12   in California, you could go lease that place right now.

13   So these are the kind of things that lead to questions of

14   if he's not staying in Wisconsin, and I tried to serve

15   him there and wasn't successful, and he's not staying at

16   the California address, which is for rent, then where's

17   he staying?

18   THE COURT:  All right.  Okay.  So I think I get

19   your position is that there -- well, why don't you tell

20   me.  What's your position about whether there's personal

21   jurisdiction over him in Wisconsin?

22   MR. CUNNINGHAM:  Well, Your Honor, there is

23   definitely personal jurisdiction, certainly for his

24   presence in years past.

25   THE COURT:  Is that the same file -- you just

1  gave Mr. Trost a file.  Is that the same file that was

2  sitting on the bench here?

3          MR. CUNNINGHAM:  Yes, Your Honor, that's

4  correct.

5          THE COURT:  Tell me what's in that, because I'm

6  not going to review it all right now.  Just tell me

7  what's in there and what I ought to look at.

8          MR. CUNNINGHAM:  First thing I would look at is

9  a bank report.  It is from Mike Montes's bank records.

10  It is from January 2015 through February 2016.  It

11  runs --

12          THE COURT:  It's going to take me a minute to

13  find that.  So I've got all these pictures of these kids

14  wearing football uniforms.

15          MR. CUNNINGHAM:  Oh, yes.  We'll -- I'll get to

16  that.  I should put it in order.  It's an Excel

17  spreadsheet.

18          THE COURT:  Okay, just give me a minute here.

19  Okay.  So I've got a -- I'm going to hold it up.  I don't

20  know if you can see this far.

21          MR. CUNNINGHAM:  That's it.

22          THE COURT:  Okay.

23          MR. CUNNINGHAM:  So those are specific payments

24  stripped out that I looked at in and around Wisconsin.

25  For example, utility payments --

1      THE COURT:  And what accounts are these from?

2      MR. CUNNINGHAM:  It's from the Tollfreezone.com

3  bank account.

4      THE COURT:  All right.  Okay.  And how did you

5  get that?

6      MR. CUNNINGHAM:  I sent a subpoena to his bank.

7      THE COURT:  Okay.  All right.  Okay.  So go

8  ahead.  Now I know what it is.  Now tell me what it tells

9  me.

10      MR. CUNNINGHAM:  So you have, just point to one,

11  Eckroth Music is a music store rental in Wisconsin.  They

12  rent instruments, the kind of instruments that kids would

13  play at a school recital.  And there are pictures from

14  Mike Montes's -- one of his other social media --

15  apparently Mike Montes likes to -- he's kind of an

16  amateur photographer, so he likes to take pictures.  So

17  he's got all kinds of pictures on there, dated as well,

18  from his kids at a music recital in Wisconsin.  So the

19  kid's going to school here.

20      You have regular church contributions, for example,

21  to a local church in Wisconsin that he goes to; ATM

22  deposits; ATM withdrawals; purchases at grocery stores,

23  the kinds of things that you would do if you lived at a

24  place.

25      THE COURT:  Well, I'd also buy groceries if I

8

1  was vacationing at a place.

2        MR. CUNNINGHAM:  True.  But they're on there

3  every month, you know, for a year plus.  Walgreens,

4  getting eyeglasses.  Getting -- going to the gas station.

5  Going to restaurants.  Just typical stuff that are

6  consistently on there month after month for over a year.

7  I totaled the purchases or transactions.  It was over

8  $93,000 in over 240 transactions in and around

9  Wisconsin --

10        THE COURT:  Okay.

11        MR. CUNNINGHAM:  -- for over a year.

12        THE COURT:  That doesn't suggest a two-week

13  vacation.

14        MR. CUNNINGHAM:  No.

15        THE COURT:  Okay.

16        MR. CUNNINGHAM:  I've also kind of infiltrated

17  his dialing operation, and on emails that he sends out

18  regularly to his customers -- this is the emails from

19  gmail.

20        THE COURT:  Okay.  Let me see if I can find

21  that.  Okay.  That's this one here I'm holding?

22        MR. CUNNINGHAM:  Yes, Your Honor.  You have --

23  key thing I'd point out is that you have PO Box 26,

24  Somerset, Wisconsin, on the bottom of every email.  I

25  have one from January 2017, October 17, 2016, and October

9

1   5, 2016.

2            THE COURT:  Okay.

3            MR. CUNNINGHAM:  So he is representing to

4   everyone else that he is doing business out of PO Box 26,

5   Wisconsin.  If you look at the actual bank statements,

6   those are the thickest, the two thickest ones --

7            THE COURT:  Yeah.

8            MR. CUNNINGHAM:  -- for Tollfreezone.com,

9   Incorporated, he tells Wells Fargo that it's PO Box 26,

10  Somerset, Wisconsin.

11           THE COURT:  Okay.

12           MR. CUNNINGHAM:  Every month for a year.

13           THE COURT:  And which year is this?

14           MR. CUNNINGHAM:  That's 2015 through 2016.

15           THE COURT:  All right.  What about 2017?  Do you

16  have information about that?

17           MR. CUNNINGHAM:  I don't have those yet, Your

18  Honor.

19           THE COURT:  All right.  Okay.

20           MR. CUNNINGHAM:  If you look at some of the

21  pictures, you have Mike Montes.  I have the one, Somerset

22  Cub Scouts, Pack 144.

23           THE COURT:  Okay.  I'm going back.  Which set of

24  pictures is that?

25           MR. CUNNINGHAM:  It's this one should be the

1  first picture of Cub Scouts.

2          THE COURT:  First one I've got is a kid holding

3  a platter.

4          MR. CUNNINGHAM:  Kid holding a platter.  The

5  platter?

6          THE COURT:  Yeah.

7          MR. CUNNINGHAM:  All right.  That is Maverick.

8  I believe that's their son, for Amy's Bistro.  That is

9  Amy Montes's catering business.

10          THE COURT:  Okay.

11          MR. CUNNINGHAM:  And just evidence that they are

12  in and around Wisconsin.  Amy has a license for the

13  St. Croix County of Public Health for, I guess, food

14  handling, food service.  And I would note that Amy Montes

15  is a corporate officer for Tollfreezone.com, Incorporated

16  as well.  So she may do other things, but she is also, at

17  least according to the Secretary of State of California,

18  she is a corporate officer.  So she was present and has a

19  business that she operates in and around Wisconsin.

20          THE COURT:  All right.

21          MR. CUNNINGHAM:  As far as the one with Somerset

22  Elementary --

23          THE COURT:  Okay.

24          MR. CUNNINGHAM:  -- that is pictures apparently

25  taken by Mike Montes of Somerset Elementary; got some

1  school kids there.  Kids are in school; got the teachers.

2  And they're --

3          THE COURT:  These are pictures that Mike Montes

4  took.

5          MR. CUNNINGHAM:  Yes, Your Honor.  It's on his

6  Google social media account.

7          THE COURT:  Okay.  And we don't know if these

8  are any Montes children in these pictures though; right?

9          MR. CUNNINGHAM:  I believe they are.  I'm not

10  that great on some of the kids' faces.

11          THE COURT:  Okay.

12          MR. CUNNINGHAM:  Specifically for the school

13  ones.

14          THE COURT:  Okay.  So we've got the

15  football-playing kids.  What are --

16          MR. CUNNINGHAM:  Oh, love football.  Just came

17  back from West Point; had a football reunion.  Know all

18  about football.  Absolutely.  Kids playing football, Your

19  Honor.  And who are they playing for?  They're playing

20  for Somerset.

21          THE COURT:  All right.  And who are these kids?

22          MR. CUNNINGHAM:  96, that is Maverick.  That is

23  Mike Montes's son.

24          THE COURT:  And how do you know that?

25          MR. CUNNINGHAM:  He is in pictures with them

1   smiling with mom and dad right here.

2            THE COURT:  Okay.  Where did you get these?

3            MR. CUNNINGHAM:  All of these are from his

4   Google.  And I have an appendix that lists where you can

5   see them as well.

6            THE COURT:  Okay.

7            MR. CUNNINGHAM:  But they're all on his Google

8   Places.  It's kind of like -- it's Google's attempt at

9   social media.  It's not Facebook.  They try.

10           THE COURT:  I know what it is.  All right.

11  Okay.

12           MR. CUNNINGHAM:  And there's -- I would note

13  there's kids playing in a band.  If I had to guess,

14  probably with Eckroth Music's rented equipment.  And

15  there's again another picture of Maverick playing the

16  drums.

17           THE COURT:  Okay.  All right.

18           MR. CUNNINGHAM:  Just trying to hammer home the

19  point that these are not things you do on a transient

20  temporary vacation.  Most people don't join churches.

21  Most people don't contribute to churches certainly.  Most

22  people don't enroll their kids in Cub Scouts or Little

23  League football, enroll them in school.  Those are things

24  that strikes me as a little bit more permanent

25  arrangement.

1          THE COURT:  It would seem.  All right.

2   Mr. Trost, what's your response to all that?

3          MR. TROST:  Well --

4          THE COURT:  Bottom line here is that

5   Mr. Cunningham has compiled quite a dossier that suggests

6   that Mr. Montes's family seems to live in Somerset,

7   Wisconsin.

8          MR. TROST:  My understanding is that he lives in

9   California and travels to Wisconsin to help his wife deal

10  with events at the Somerset property.

11         THE COURT:  Is he separated from his wife?

12         MR. TROST:  No.  I believe they live together.

13         THE COURT:  And then what about the post office,

14  Somerset post office boxes on all the business

15  correspondence as well?

16         MR. TROST:  Your Honor, you saw the plaintiff

17  produce this information to me for the first time this

18  morning.  This is the first time I've seen it.

19         THE COURT:  I've also got to ask, because I

20  asked about the principal place of business of each of

21  the defendant businesses, and the response is all the

22  defendants' businesses are set up for 26961 Via La

23  Mirada, San Juan, Capistrano.  Now that doesn't exactly

24  tell me what goes on there, it just says they're set up

25  for that.  And so I don't know, seems a little bit

1    evasive and incomplete.

2              MR. TROST:  Okay.

3              THE COURT:  All right.  Here is what I'm going

4    to do:  I'm going to find that my concerns over personal

5    jurisdiction have really been amply addressed by the

6    information that Mr. Cunningham has assembled.  I think

7    that the declaration of Mr. Montes is informative to an

8    extent, but it still seems evasive in points,

9    particularly in disclosing the principal place of

10   business of his actual businesses.  Mr. Cunningham's

11   evidence amply addresses that, I think, when he has bank

12   records that have his Somerset address.

13             MR. TROST:  Your Honor.

14             THE COURT:  Yes.

15             MR. TROST:  I'm sorry to interrupt.

16             THE COURT:  Go ahead.  You want to make a pitch

17   here?

18             MR. TROST:  Well, on that topic there's one

19   thing I wanted to ask and that is what -- I believe he

20   said he received the bank records from a subpoena.  I was

21   wondering what case did he subpoena the bank records in.

22             THE COURT:  All right.  Let's find out.  How did

23   you get a subpoena for the bank records?

24             MR. CUNNINGHAM:  Your Honor, I have several

25   lawsuits against Mike Montes for a myriad of calls over

1   the years, but it was one of those lawsuits.

2           THE COURT:  So we know about the Tennessee case,

3   but just give us --

4           MR. CUNNINGHAM:  They're all in Tennessee.

5           THE COURT:  Okay.  There's a particular case in

6   Tennessee that I'm aware of.  Have you got more than two

7   lawsuits?

8           MR. CUNNINGHAM:  Yes, Your Honor.  There's

9   Cunningham v. Shot Point, Cunningham V. Select Student

10  Loan Help and I have Cunningham v. Telemarketers that I

11  -- so there's four including this one.

12          THE COURT:  Okay.  So he's got other pieces of

13  litigation.

14          MR. TROST:  I just bring it up because I haven't

15  seen any subpoenas in this case with regards to bank

16  records, and frankly, the bank records that I'm seeing

17  here is something, that as an attorney, I'd probably only

18  have access to after I actually had a judgment.

19          MR. CUNNINGHAM:  That would be incorrect.  Every

20  privacy law I've ever seen, the Fair Credit Reporting

21  Act, FDCPA says subject to subpoena or court order.

22          MR. TROST:  Also do you have proof that you gave

23  a copy of the subpoena to Mr. Montes?

24          MR. CUNNINGHAM:  I didn't give it to him.  I

25  sent it to the address that he lists.  And it just

1    reminded me about return mail.  I knew you filed a motion

2    talking about well, I should have attempted to serve him

3    at the San Juan, Capistrano address.

4            THE COURT:  Address your comments to the Court,

5    if you would.

6            MR. CUNNINGHAM:  Oh.  Yes, Your Honor.  Just the

7    other day he filed a motion about the San Juan -- I

8    should have attempted to serve him at the San Juan,

9    Capistrano address.  I did attempt to serve him at the

10   San Juan, Capistrano address.  The mail came back

11   returned.  I have an affidavit from a private

12   investigator that went there in March 2016, said there

13   was a lock box on the door.  No one home.  No cars in the

14   driveway.  And they spoke to a neighbor; said he --

15   neighbor hasn't seen him in months.  He normally resides

16   in Wisconsin.  So knowing that -- I mean I still tried to

17   serve him there.  The mail came back.  That's on file.

18   It's in the packet.

19           THE COURT:  I think I've heard enough.

20   Mr. Trost, I'll give you a chance -- I kind of didn't

21   give you a chance to respond generally to the arguments,

22   I just asked some questions.  But do you have anything

23   you want to tell me about your client's position here?

24           MR. TROST:  I mean honestly the information in

25   the affidavit and declarations is what I think we need to

1  rely on.  My arguments are set forth in the brief that I

2  had filed earlier.  I don't think there's anything

3  additional that I could tell the Court here that's going

4  to sway the Court's opinion.

5          THE COURT:  All right.  Here's what I'm going to

6  -- here is what I'm going to do:  I will just note a

7  couple of things here.  Obviously Mr. Montes is resisting

8  service and he has more or less admitted that.  He was

9  contacted by the sheriff and he said you're going to have

10 to hunt me down, and so indeed, that's what

11 Mr. Cunningham has done with great effectiveness as far

12 as I'm concerned.  Mr. Cunningham has compiled a dossier

13 that suggests that the presence in Wisconsin, both of

14 Mr. Montes and his businesses, go far beyond what one

15 would expect to do on vacations, the church

16 contributions, having a son play football.  Now, I note

17 that's the son, that's not Mr. Montes himself.  But since

18 there's no evidence here that they're separated, it

19 really seems that Mr. Montes's family life is in

20 Wisconsin.  And I think it is confirmed by the business

21 records that suggest that he has the Somerset, Wisconsin,

22 address is the one that he uses, on at least the business

23 correspondence that we see here, which suggests that his

24 businesses may in some sense be set up to operate in

25 California, but they are, in fact, operated out of

1   Somerset, Wisconsin.

2       I do find that service has appropriately been

3   accomplished here by publication, given the failure of

4   traditional means of personal service.  According to the

5   jurisdictional statute in Wisconsin, under 801.05(1)

6   local presence or status, (1)(a) is service is --

7   jurisdiction is appropriate if the defendant is a natural

8   person present within the state when served.  Now, we

9   looked at that to see whether that was restricted to

10  personal service.  We couldn't find any Wisconsin cases

11  saying that that provision applied only when the

12  defendant was personally served.  But I note that service

13  by publication ran from March 9th to 23rd of 2017 and

14  Mr. Montes admits that he was in Wisconsin from March 22

15  to April 5th this year.  So he was, in fact, present in

16  Wisconsin during the period when service by publication

17  was made.

18      In addition to that, I think that Mr. Montes has

19  substantial and not isolated activities within this state

20  and therefore personal jurisdiction would also be

21  appropriate under 801.05(d).  I'll also point out that

22  those activities include not just his substantial

23  personal life here, suggesting that, in fact, he does

24  live in Wisconsin, but also that they are related to his

25  business because the business records that Mr. Cunningham

1   has produced suggests that he uses the Somerset address

2   for his business activities as well.

3       If I turn to the constitutional dimensions of the

4   analysis, I certainly see, again, substantial and not

5   isolated activities here in Wisconsin by Mr. Montes and I

6   certainly see nothing to suggest that subjecting him to

7   personal jurisdiction in Wisconsin would offend

8   substantial notions of -- or traditional notions of fair

9   play and substantial justice.  So I'm comfortable that

10  jurisdiction is appropriate.  As I've already indicated

11  last time we were together, I think that service is

12  appropriate and there's no reason for his failure to

13  defend the suit.

14      The only thing that I'm not going to -- so I'm going

15  to find that there is default, there's no reason to set

16  aside the default, and that Mr. Cunningham is entitled to

17  default judgment.  The only thing that I'm not going to

18  give Mr. Cunningham complete satisfaction on is the

19  damages amount.  I don't know at this point that -- in

20  fact, I do know at this point that I do not have enough

21  evidence for me to determine that the violations of the

22  TCPA were willful.  I don't know that I can determine

23  that on the evidence that I have.

24      Accordingly, I'm going to award statutory damages

25  for nonwillful violations of the TCPA, but we do have two

1    separate violations for each -- statutory violations for

2    each phone call.  It's not appropriate to award multiple

3    statutory damages awards for multiple regulatory

4    violations, but if separate statutory sections of the

5    TCPA are violated, then the multiple statutory awards are

6    appropriate.  So I find that two sections of the TCPA

7    were violated by each of the 176 phone calls, which gives

8    us a statutory damages award then of $176,000, which is

9    the amount of the award.

10        The costs that Mr. Cunningham is entitled to are the

11   ones that he submitted here are the ones for the filing

12   fee of $450, which will produce a judgment amount of

13   $176,450.  So that will be the amount of the default

14   judgment against the defendants.

15        I will make the damages award -- the judgment be

16   joint and several liability -- the defendants are joint

17   and severally liable for the judgment amount.  And I

18   think that pretty much covers us.  Is there anything else

19   I need to do for you, Mr. Cunningham?

20        MR. CUNNINGHAM:  Your Honor, I would just ask

21   for an emergency temporary restraining order for any

22   funds in excess of $10,000 being taken out of those bank

23   accounts.

24        THE COURT:  Which bank accounts?

25        MR. CUNNINGHAM:  I'm pretty much going to say

1  all of them.  There's a listing on the first or second

2  page of the bank records for Wells Fargo.

3          THE COURT:  Okay.  And so I've got two thick

4  files here of business records, declaration.  Which

5  one --

6          MR. CUNNINGHAM:  Yes, Your Honor.  It's -- I

7  think it's the page right after that.

8          THE COURT:  Okay.  And then on that, there's

9  page two.  That's a two-page document?

10          MR. CUNNINGHAM:  Yes, Your Honor.

11          THE COURT:  Okay.  And so we have two business

12  accounts for the Tollfreezone.com.  Is that what we're

13  talking about?

14          MR. CUNNINGHAM:  Yes, Your Honor.  My other

15  concern is that it will --

16          THE COURT:  There's only $6,000 according to --

17  I mean this is a statement from January, but -- I

18  understand your concern, but you've got to identify for

19  me the accounts that we're talking about.

20          MR. CUNNINGHAM:  It's the Tollfreezone.com

21  account.  One is a money market, the other is a checking

22  account that has more in-and-out activity.  The money

23  market, again, this is dated, but he had over $50,000,

24  probably 70- or $80,000 in there.  And so just basically

25  over the next 60 days, not more than $10,000 in total

1  taken out.  He has -- in any given month, he would have

2  50- to $120,000 that would cycle through the

3  Tollfreezone.com bank account.  So there may not

4  necessarily be on this day or that day, but generally

5  there's a six-figure amount of money that cycles through

6  that account.

7          THE COURT:  Okay.  So you want me to basically

8  freeze that account?

9          MR. CUNNINGHAM:  Yes, Your Honor.

10          THE COURT:  Okay.  Mr. Trost.

11          MR. TROST:  We would oppose that motion.  I

12  don't believe he meets any type of legal or factual

13  standard for a temporary restraining order on any kind of

14  account.  We're not even in a situation here where an

15  appeal period has run or a time period has lapsed.

16          THE COURT:  I'm not giving him the money, that's

17  clear enough.  I'm not going to give Mr. Cunningham the

18  money out of this account immediately.  But I am

19  concerned with, given Mr. Montes's history of evasion

20  with respect to the service issue, I'm afraid that he's

21  going to take the money out of the account.  It's not his

22  personal account, it's a business account, and the one

23  that he says is involved with the auto dialing business.

24      Okay.  Here's what I'm going to do:  I'm going to

25  order that the -- any accounts in the name of

1   Tollfreezone are frozen.  You can -- Mr. Trost, you can

2   make a motion to release funds from the Tollfreezone

3   account on a showing of necessity if there are business

4   expenses that are reasonable.  I'm afraid, based on bank

5   records that I see where we've got church donations and

6   the like coming out of the Tollfreezone account, that

7   this really is not being used strictly for business

8   purposes.  So I'm just going to order that the assets of

9   the Tollfreezone accounts at Wells Fargo are frozen and

10  they will be released on a motion showing a necessity of

11  releasing them.  But otherwise, Mr. Cunningham has a

12  judgment for a little over $176,000.  This is the

13  business account for the business that's involved in the

14  telephone business, so I think it's appropriate to freeze

15  these assets.  But you can make a motion showing the

16  necessity of releasing these funds.  But otherwise I

17  think they should be preserved for Mr. Cunningham.

18      I'm not going to release them to Mr. Cunningham

19  certainly at least until the appeal period has run.  They

20  may be held in the Court's registry for some time to

21  come, but I'm not going to allow Mr. Montes to spirit

22  them away.

23          MR. CUNNINGHAM:  Your Honor, just on the

24  logistics of that as far as getting --

25              THE COURT:  I will issue an order.  Mr. Trost

1   will, of course, communicate the Court's order to

2   Mr. Montes.   But I'll issue a written order today that

3   freezes those accounts.   And then if you make a motion to

4   me, I will then order that those funds be paid into the

5   Court's registry.   I do want to preserve those funds

6   against any potential appeal of the case or the decision

7   in any way, but I'm interested in preserving them for you

8   but also protecting Mr. Montes's rights should he prevail

9   on an appeal.   Okay?

10            MR. CUNNINGHAM:   Very good.   Thank you, Your

11  Honor.

12            THE COURT:   Okay?   Anything else?

13            MR. CUNNINGHAM:   No, Your Honor.

14            THE COURT:   Okay.   And is that the only bank

15  account that -- the Wells Fargo bank account is the one

16  you've tracked down for Tollfreezone.   I assume if there

17  were other bank accounts, you'd be telling me about them.

18            MR. CUNNINGHAM:   Your Honor, he has several bank

19  accounts for some of the other entities there.   The

20  Tollfreezone.com is the one that has the most activity.

21  Kind of my other thought is that he might switch his

22  merchant account, which isn't too difficult to do, to one

23  of the other bank accounts.

24            THE COURT:   Are they all with Wells Fargo?

25            MR. CUNNINGHAM:   Yes, Your Honor.

1        THE COURT:  Are you aware of accounts -- I mean
2    if Mr. Montes has a personal account --
3        MR. CUNNINGHAM:  Actually --
4        THE COURT:  He's got to live somehow so...
5        MR. CUNNINGHAM:  Your Honor, I think from what
6    it appears from bank records, he pays most of his
7    personal expenses out of the Tollfreezone.com account.
8    So I'm not going to get into commingling of funds and all
9    that, but I mean that's what it appears to be.  I'm not
10   100 percent sure, they seem to be kind of
11   business-related for some of the other accounts which is
12   knowing he has, I think, four or five or six different
13   accounts.
14       THE COURT:  All in the name of Tollfreezone.com?
15       MR. CUNNINGHAM:  No, Your Honor.  They're in the
16   name of some of the other defendants, the corporate
17   entities as well: Podmusicyear and Mydataguys.com, LLC,
18   emailmyvmail.
19       THE COURT:  Okay, here's what I'm going to do:
20   Any Wells Fargo account that is in the name of one of the
21   defendants is frozen, subject to the same provisions.
22   And then Mr. Trost can make a motion to release those
23   funds on a showing of necessity.  Commonly enough what I
24   would do in a case in which I've got -- sometimes I just
25   have one account for a defendant and I will freeze the

1  account and then allow expenditures of a certain amount

2  out of that account.  This is a mess here because we have

3  multiple accounts by corporate defendants, none of them

4  apparently Mr. Montes himself.  So I'm going to freeze

5  all of the accounts in the name of the corporate

6  defendants and then, Mr. Trost, you can make a motion.

7  If he's using these for his personal expenses, obviously

8  I'm not going to deprive Mr. Montes and his family of

9  money to pay their grocery bills.  But they're being paid

10  out of a corporate account, so you're going to have to

11  make a case of for why I should release a corporate

12  account for that purpose.  But I'll be open to that.

13       As I said, he's going to have enough money to pay

14  his expenses, but you're going to have to convince me

15  that I should allow him to take money in a certain

16  limited amount out of these business accounts.  But for

17  right now, those business accounts are frozen and then

18  Mr. Trost can make a motion to document it and support

19  it, of course, to release some of those funds as needed

20  by Mr. Montes and his family.

21       All right?  With that, you'll get a written order

22  today.

23            MR. CUNNINGHAM:  Thank you, Your Honor.

24       (Proceedings concluded at 8:39 a.m.)

25

27

1          I, LYNETTE SWENSON, Certified Realtime and Merit

2    Reporter in and for the State of Wisconsin, certify that

3    the foregoing is a true and accurate record of the

4    proceedings held on the 18th day of July 2017 before the

5    Honorable James D. Peterson, District Judge for the

6    Western District of Wisconsin, in my presence and reduced

7    to writing in accordance with my stenographic notes made

8    at said time and place.

9    Dated this 19th day of January 2018.

10

11

12                         /s/_____

13                         Lynette Swenson, RMR, CRR, CRC
                           Federal Court Reporter

14

15

16

17

18   The foregoing certification of this transcript does not
     apply to any reproduction of the same by any means unless
19   under the direct control and/or direction of the
     certifying court reporter.
20

21

22

23

24

25