## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:16-cv-00761-jdp |
| | ) | |
| v. | ) | Honorable Judge James D. Peterson |
| | ) | |
| MICHAEL MONTES, *et al*., | ) | Hon. Magistrate Judge Stephen L. Crocker |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff, CRAIG CUNNINGHAM, by and through his attorneys, and for his

Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff states as follows:

## I.     INTRODUCTION

Defendants seek summary judgment in this case based upon four different arguments. First,

Defendants claim they are not liable under the Telephone Consumer Protection Act ("TCPA"),

47 U.S.C. § 227, *et seq.*, because they did not make or initiate calls through an automatic telephone

dialing system. Second, Defendants claim that Plaintiff has not produced any evidence that the

illegal calls he received originated from Defendants or their customers via the autodialer123.com

website operated by Defendants. Third, Defendants argue that they are shielded from liability by

the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Finally, Defendants argue that

Plaintiff does not have Article III standing because he has filed other TCPA lawsuits in the past

and therefore has suffered no injury-in-fact.

As Plaintiff will demonstrate, each of Defendants' arguments fails and their Motion for

Summary Judgment should be denied. A genuine issue of fact exists as to whether Defendants

were so involved in the process of making the automated telemarketing calls Plaintiff received

that they are deemed to have made those calls themselves. Furthermore, Defendant Michael Montes ("Montes") testified during his deposition that he provided the "robo-calling" system used by his customers, and many of his customers were the same companies that placed the alleged illegal calls to Plaintiff. In addition, Defendants have refused to comply with a subpoena for records that would help Plaintiff to prove the calls he received were made by Defendants' customers through Defendant's system and with their assistance.

Defendants also completely misapply and misinterpret the CDA and the illegal conduct alleged in this case is not protected by it. Finally, simply because Plaintiff has filed other TCPA lawsuits in the past does not mean that he does not have Article III standing to pursue his claims in this case. The circumstances at hand are factually distinct from the cases Defendants cite in their Motion in support of their Article III argument. Therefore, Plaintiff respectfully requests the Court deny Defendants' Motion for Summary Judgment.

II.    **STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Cox v. Acme Health Serv., Inc.,* 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

III.    **ARGUMENT**

    A.    **A GENUINE ISSUE OF FACTS EXISTS AS TO WHETHER DEFENDANTS WERE SO INVOLVED IN THE PLACEMENT OF THE AUTOMATED CALLS AT ISSUE SO AS TO BE DEEMED TO HAVE INITIATED THEM.**

Plaintiff submits that Defendants, especially Defendant Montes himself, through their high level of involvement in the placement of the illegal automated telemarketing calls Plaintiff received, were so involved in the placement of such calls so as to be deemed to have initiated the calls themselves.

Congress gave the Federal Communications Commission ("FCC") the authority to make rules and regulations implementing the requirements of the TCPA. 47 U.S.C. § 227(b)(2). Pursuant to that authority, in 2015, the FCC issued a Declaratory Ruling and Order, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72, 30 FCC Rcd. 7961 (July 10, 2015). Noting that "neither the TCPA nor the Commission's rules define "make" or "initiate," nor do they establish specific factors to be considered in determining who makes or initiates a call," the FCC offered the following guidance:

> Specifically, a "direct connection between a person or entity and the making of a call" can include…being "so involved in the placing of a specific telephone call" as to be deemed to have initiated it. Thus, we look to the totality of the facts and circumstances surrounding the placing of a particular call to determine…whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA…Depending upon the facts of each situation, these and other factors, such as the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients, can be relevant in determining liability for TCPA violations. Similarly, whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them.

*Id.* at 7980-81, par. 29-30 (footnotes omitted).

Thus, Defendants may be liable for "placing" or "making" a call, where their conduct demonstrates that they were highly involved in the placement of the call, taking into account the goals and purposes of the TCPA. "The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *Id.* at 7979-80, par. 29 (footnotes omitted). "[T]he evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…" TCPA, Pub. L. No. 102–243, §§ 12-13.

These are not allegations of vicarious liability, but rather *direct* liability for Defendants' level of involvement in the placement of the automated telemarketing calls Plaintiff received. In the case at bar, Defendant Michael Montes made many admissions that, at a minimum, raise a genuine issue of material fact as to whether Defendants were so involved in placing the calls to Plaintiff as to be deemed to have initiated them, considering the goals and purposes of the TCPA. These admissions include the following.

Montes testified that his company offers "robocalling," "predictive dialing," and "virtual telemarketer" services. *Deposition of Michael Montes*, p. 12, lines 4-9 (January 14, 2019) previously filed as Dkt. No. 127. "Virtual telemarketer" services place telemarketing calls with prerecorded messages. *Montes Dep.* (Dkt. No. 127), p. 13, lines 9-20. The "robocalling system" places a high volume of calls at once, either in a randomized order or sequentially through a list of numbers. *Montes Dep.* (Dkt. No. 127), p. 14, lines 14-24; p. 15, line 13 through p. 16, line 1. Once an account has been set up and the phone numbers have been loaded into the dialing system, there is no further human intervention involved in placing the calls. *Montes Dep.* (Dkt. No. 127), p. 70,

4

lines 5-13. The systems also allows for "predictive dialing" which places calls automatically in such a way as to try to predict when a telemarketer is available to take a call if the recipient answers the phone. *Montes Dep*. (Dkt. No. 127), p. 16 line 14 through p. 18, line 2.

Montes provisions an account for new customers to allow them to place calls such as those Plaintiff alleges he received. Montes assists those customers in setting up telemarketing accounts with a Panamanian company known as "Technologic" and "dialer.TO". He has done so for the last 5-10 years. *Montes Dep*. (Dkt. No. 127), p. 37 line 12 through p. 38, line 1; p. 38, line 6 through p. 39, line 9. Montes owns the website located at autodialer123.com through which his customers sign up for his services. The website was used when he was operating as TollFreeZone.com, Inc. *Montes Dep*. (Dkt. No. 127), p. 23 line 17 through p. 24, line 12. **For some customers,** if they provide their data, their message, and their caller ID, **Defendants will set up the dialing campaigns for them.** *Montes Dep*. (Dkt. No. 127), p. 102, lines 1-4. **For some customers, Montes will run their call campaigns, actually "hit[ting] send or start."** *Montes Dep*. (Dkt. No. 127), p. 117, lines 10-24.

Montes has recorded a "myriad" of training videos to teach his customers how to use Defendants' system to place automated calls, and personally makes himself available to provide support and assistance to teach customers how to use the system. He provides such assistance to "[p]robably half" of his customers. *Montes Dep*. (Dkt. No. 127), p. 41, line 7 through p. 42, line 1. At one point, Montes would field "[p]robably a dozen" such support calls per day. *Montes Dep*. (Dkt. No. 127), p. 55, lines 1-6. A toll-free phone number on Defendants' website sends support calls to Montes' cell phone. *Montes Dep*. (Dkt. No. 127), p. 84, lines 13-19. For some customers, Montes will conduct live training via the internet to multiple potential users. One such training

session was discussed at length during Montes' deposition. *Montes Dep.* (Dkt. No. 127), p. 102, line 19 through p. 110, line 9.

Montes made the training videos himself and no one assisted him. *Montes Dep.* (Dkt. No. 127), p. 44, lines 7-10. Several of the videos were reviewed during Montes' deposition and he confirmed that it was has voice in each video. *Montes Dep.* (Dkt. No. 127), p. 77, lines 2-19; p. 82, lines 9-19; p. 85, line 23 through p. 86, line 7; p. 87, lines 12-22; p. 92, lines 9-19; p. 95, lines 10-19; p. 96, line 20 through p. 97, line 4; p. 100, line 17 through p. 101, line 1; p. 101, lines 12-21. One such video, entitled "How to Make a Call Campaign and Schedule Get [sic] the System to Dial out Your Campaign" instructs users how to set up an automated dialing campaign that will play a prerecorded message when somebody answers the phone. *Montes Dep.* (Dkt. No. 127), p. 77, lines 2-19; p. 80, lines 8-12. Another such video entitled "How to Extract Report Data to Migrate" instructs users how to create a variety of different reports showing the results of their automated dialing campaigns. *Montes Dep.* (Dkt. No. 127), p. 92, lines 9-19; p. 94, line 1 through p. 95, line 6. Another such video entitled "How to Start and Stop a Campaign" instructs users on "the entire process of, from beginning to end, of starting a campaign." *Montes Dep.* (Dkt. No. 127), p. 100, line 17 through p. 101, line 11.

Most importantly, Montes testified that without Defendants or someone else who provides the same service, his customers would not be able to place high volumes of automated calls sending out prerecorded messages to a large number of phone numbers at the same time. *Montes Dep.* (Dkt. No. 127), p. 120, lines 7-12. Defendants' entire argument rests upon conclusory statements that Defendants did not make or initiate any commercial telemarketing calls using an auto-dialer. Defendants claim that Tollfeezone.com, Inc. had no involvement in users' utilization of the third-party dialer platform to send out calls. Yet Montes' deposition testimony belies this statement.

6

Montes testified that he is the sole owner of Tollfeezone.com, Inc. *Montes Dep.* (Dkt. No. 127), p. 18, line 23 through p. 19, line 10. Montes owns the website located at <u>autodialer123.com</u> through which his customers sign up for his services. The website was used when he was operating as TollFreeZone.com, Inc. *Montes Dep.* (Dkt. No. 127), p. 23 line 17 through p. 24, line 12. Yet despite all of Montes' deposition testimony cited above, Defendants still claim they had no involvement in the placement of the automated telemarketing calls at issue.

The FCC has ruled that we must "look to the totality of the facts and circumstances surrounding the placing of a particular call to determine…whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. at 7980, ¶ 30. By its very nature, this is a factual inquiry. In light of all of Montes' deposition admissions described above – including that in some instances, he set up and ran his customers' automated dialing campaigns – there is, at a minimum, a genuine issue of material fact as to whether Defendants were so involved in the placement of the calls Plaintiff received to be deemed to have initiated them. As such, Defendants' Motion for Summary Judgment on this basis must be denied.

**B.    A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER AUTOMATED TELEMARKETING CALLS RECEIVED BY PLAINTIFF WERE PLACED THROUGH THE SYSTEM ACCESSED VIA DEFENDANTS' WEBSITE.**

Defendants next claim that they are entitled to summary judgment because Plaintiff has not produced any evidence that the calls at issue in this lawsuit were made by Defendants. This conclusory statement ignores the crux of Plaintiff's allegations in this case as described above. It is Plaintiff's position that Defendants, through their high level of involvement in the placement of the illegal automated telemarketing calls Plaintiff received, were so involved in the placement of

those calls as to be deemed to have initiated them, considering the goals and purposes of the TCPA. The admissions of Montes and the evidence produced by Plaintiff in discovery do create a genuine issue of fact as to whether Defendants were so involved. Such evidence also creates a genuine issue of fact as to whether those calls came from admitted customers of Defendants, with Defendants' involvement.

Many of the customers for whom Defendants provided the platform to facilitate their robo-call telemarketing sales campaigns were companies and individuals from whom Plaintiff received automated telemarketing calls. As admitted by Montes in his deposition, these customers include, but are not limited to Jerry Maurer, Brian Kaplan, 8 Figure Dream Lifestyle, and Elite Marketing Alliance. *Montes Dep*. (Dkt. No. 127), p. 119, line 20 through p. 120, line 6. Further, at Montes' deposition, he was presented with a printed copy of a page from his autodialer123.com website that contains Defendant's sign-up form for new customers. Montes confirmed this exhibit. *Montes Dep*. (Dkt. No. 127), p. 28, line 22 through p. 29, line 3. Attached to this Response brief is the Declaration of David B. Levin, counsel for Plaintiff, authenticating this document, which was marked as an exhibit at Montes' deposition.

Also attached to this Response brief is the Declaration of Plaintiff. In his Declaration, Plaintiff explains how many of the calls reflected in this list he prepared, and many of the calls reflected in the records and recordings he produced to Defendant, were from individuals who were admitted customers of Montes. *See Declaration of Plaintiff,* ¶¶ 2-4 and 7. These customers include those whose connections to his businesses were admitted by Montes, Jerry Maurer, Brian Kaplan, 8 Figure Dream Lifestyle, and Elite Marketing Alliance. Plaintiff also received calls from individuals who represented themselves as being associated with other customers of Montes who were listed on the autodialer123.com sign-up page – Elite Profit System, Enagic, Tidom, and

Secret Success Machine a/k/a SSM. *See Declaration of Plaintiff*, ¶¶ 2-3, 5, and 7. Plaintiff also received calls from other individuals who told Plaintiff they obtained Plaintiff's telephone number through Montes – Terryle Butts, Bill White, Rich Holman, and Marc Wilson. *See Declaration of Plaintiff*, ¶¶ 2-3 and 6-7.

Defendants' arguments regarding the evidence Plaintiff has allegedly failed to produce are somewhat disingenuous, considering Montes has refused to provide records of calls requested by Plaintiff in a lawfully-served subpoena. As Plaintiff outlined in his Motion to Compel (Dkt. No. 133), on December 26, 2018, Plaintiff served Montes, with a subpoena, pursuant to Fed. R. Civ. P. 45, to produce documents and records at his previously-scheduled deposition on January 14, 2019. Both via communication between counsel and via Montes' testimony at his deposition, Montes flatly refused to comply and produce the documents and records. *See* Dkt. No. 133-2 and Dkt. No. 127, *Montes Dep.*, p. 22, line 16 through p. 23, line 4.

The documents and records sought by Plaintiff in the subpoena are directly relevant to Plaintiff's claims that Defendants violated the TCPA, as they would establish the relationships between Defendants and the individuals and business from whom Plaintiff received unsolicited telemarketing calls. The documents sought by Plaintiff's subpoena could establish that many of the phone calls Plaintiff received were from Defendants' customers and were placed with the involvement of Defendants. *See* Dkt. No. 133-1, p. 4-6. Without the ability to inspect these documents, Plaintiff is unable to respond as completely as possible to Defendants' arguments that Plaintiff cannot trace the calls he received to the Defendants' systems.

Fed. R. Civ. P. 56(d) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

discovery; or (3) issue any other appropriate order." The Declaration of Plaintiff, attached to this Response brief, supports Plaintiff's need for the documents and records to which Montes has access, and which he refuses to produce. *See Declaration of Plaintiff,* ¶ 8. Therefore, the Court has the authority to deny Defendants' Motion for Summary Judgment, defer considering it, allow time for Plaintiff to obtain Montes' compliance with the subpoena, or issue any other appropriate order. Allowing Defendants to refuse to provide these documents and records while simultaneously seeking summary judgment against Plaintiff in this case would be unjust.

However, even without these documents and records, Plaintiff has established a genuine issue of fact as to whether the automated telemarketing calls he received were placed by customers of Defendants with their high level of involvement

### C.    THE CDA DOES NOT GRANT DEFENDANTS IMMUNITY FOR THEIR VIOLATIONS OF THE TCPA.

The CDA immunizes providers of interactive computer services against liability arising from content created by third parties: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). This section goes on to state "No provider or user of an interactive computer service shall be held liable on account of – (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1)." 47 U.S.C. § 230(c). One of the primary purposes of the CDA is "to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer." 47 U.S.C. § 230(b)(5).

Plaintiff is not complaining about the content of Defendants' website, autodialer123.com. Plaintiff's claims in this case have nothing to do with the objectionable nature of any content on that website. Plaintiff is claiming that, with a high level of involvement by Defendants, their customers placed automated telemarketing calls to Plaintiff without his consent.

The case of *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959 (N.D. Cal. 2016), analyzed this very issue in depth. In *Nunes*, the defendant argued that the CDA shielded it from liability under the TCPA. The court held that the TCPA does not depend on the content of any communication, or any assertion that the defendant is responsible for the content of the communication. Rather, the court held that liability under the TCPA rests on the method of the communication, irrespective of whether the content is bad or good, harmful or harmless. Either way, the unwanted content would be a nuisance. *Id.* at 967-968.

Similar to Twitter, the defendant in the *Nunes* case, Plaintiff does not claim that Defendants review the content of every telemarketing call placed through their system. Plaintiff does not claim that Defendants make decisions about whether to send out every call. Plaintiff's claims do not seek to impose liability arising from content communicated during the automated calls. *Id.* at 967. It is the placement of the automated calls themselves, without Plaintiff's consent, regardless of the content of the calls, which creates Defendants' liability under the TCPA.

> To analogize to a more traditional publishing platform, if someone delivers newspapers containing false gossip, and the person who is the subject of the gossip sues the delivery person for defamation, that lawsuit seeks to treat the delivery person as a publisher. But if the delivery person throws an unwanted newspaper noisily at a door early in the morning, and the homeowner sues the delivery person for nuisance, that suit doesn't seek to treat the delivery person as a publisher. The suit doesn't care whether the delivery person is throwing a newspaper or a rock, and the suit certainly doesn't care about the content of the newspaper. It does not involve the delivery person's "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." Nor is the lawsuit

asking a court to impose "liability arising from content." It merely
seeks to stop the nuisance.

*Id.* (citations omitted)

No part of Plaintiff's allegations seeks to hold Defendants' liable for the content of the
automated calls made to Plaintiff. Plaintiff seeks to hold Defendants liable because his privacy
rights, as protected by the TCPA, were violated by the annoying, time-wasting telephone calls
made to his cell phones by Defendants' customers, with Defendants' involvement. The CDA has
no application to the issues raised in this case and Defendants' Motion for Summary Judgment
should be denied on this basis.

### D.    PLAINTIFF DOES HAVE ARTICLE III STANDING AND HE HAS SUFFERED VALID INJURIES-IN-FACT.

To sustain a claim, a plaintiff must demonstrate he has suffered an "injury in fact." *Spokeo,
Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). An injury in fact is "an invasion of a legally protected
interest" that is "concrete and particularized" and "actual or imminent, not conjectural or
hypothetical." *Id.* A concrete injury is one that must "actually exist" and is "real and "not abstract."
*Id.* An injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way."
*Id.* It is important to note that *Spokeo* did not involve alleged violations of the TCPA.

As it pertains to the TCPA, the Ninth Circuit Court of Appeals has held that "[u]nsolicited
telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the
solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any
additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Group,
LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017), quoting *Spokeo*, 126 S.Ct. at 1549. "Unlike in *Spokeo*,
where a violation of a procedural requirement minimizing reporting inaccuracy may not cause
actual harm or present any material risk of harm," the *Van Patten* court correctly noted that

automated telemarketing calls (or in this case, text messages) sent absent the recipient's consent, "present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." *Id.* As such, the *Van Patten* court held that the plaintiff "alleged a concrete injury in fact sufficient to confer Article III standing." *Id.*

District courts within the Seventh Circuit have reached the same conclusion. *See, e.g., Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 857-858 (N.D.Ill. 2016) ("[The TCPA] directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA. There is no gap – there are not some kinds of violations of [the TCPA] that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients."); *see also Griffith v. ContextMedia, Inc.,* 235 F.Supp.3d 1032, 1035-1036 (N.D.Ill. 2016) ("[P]laintiffs alleging the receipt of specific, unsolicited telephone communications, whether by voice or text message, have Article III standing to pursue TCPA claims based on lost time and invasion of privacy.").

Nonetheless, Defendants argue that because Plaintiff has filed a number of other lawsuits in the past alleging that others have violated the TCPA, he therefore has not suffered a concrete harm sufficient to confer him with Article III standing in this case. In support of this proposition, Defendants cite two cases, both of which are distinguishable from the facts at hand.

The first of those cases, *Tel. Sci. Corp. v. Asset Recovery Solutions, LLC,* 2016 U.S. Dist. LEXIS 104234 (N.D.Ill. Aug. 8, 2016) (filed by Defendants as Dkt. No. 124-6), did not involve an individual consumer plaintiff. Instead, the plaintiff was a company that subscribed to thousands of telephone numbers to gather data which it then used to detect robo-calling patterns for call-blocking services it offered for sale to consumers. The information the plaintiff received from the

13

robo-calls placed to its thousands of telephone numbers provided the analytical basis upon which its consumer call-blocking service operated. That is a far cry from an individual consumer plaintiff such as the Plaintiff in this case.

In the other case cited by Defendant in support of its argument that Plaintiff lacks Article III standing, *Morris v. Unitedhealthcare Ins. Co.*, 2016 U.S. Dist. LEXIS 168288 (E.D.Tex. Nov. 9, 2016) (filed by Defendants as Dkt. No. 124-7), the court found that the plaintiff *did have standing to sue under the TCPA*. The *Morris* plaintiff was distinguished by the court from the plaintiff in *Tel. Sci. Corp.* and from the plaintiff in another case, *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782 (W.D.Pa. 2016). In *Stoops*, the plaintiff admitted that she purchased and maintained over thirty cell phones with Florida telephone numbers; that she did this because she knew the locations she selected in Florida were economically depressed and included people who would be defaulting on their loans or their credit cards; that she waited for the phones to ring; that she sometimes answered the calls and told the callers to stop; and that she hoped the calls would continue so she could treble her damages. The *Stoops* court concluded that the plaintiff did not suffer a true nuisance or an invasion of her privacy because she admitted that her only purpose in using her cell phones was to file TCPA lawsuits. *Morris*, at *16-17.

There is no such evidence in the record in this case. Unlike the plaintiff in the above-cited cases, the Plaintiff in this case did not make any statements on the record that he invited the telemarketing calls made by Defendants' customers with Defendants' involvement. Plaintiff was asked no questions during his deposition about whether he viewed the illegal phone calls he received as an opportunity to make money, nor anything of that sort. To the contrary, in his Declaration, Plaintiff has stated that he does not maintain his cellular telephone numbers for the purpose of pursuing TCPA lawsuits; that he did not invite telemarketing calls from any of the

14

individuals or companies mentioned above, nor from any other telemarketers; that he does not hope for telemarketers to call him so he can file lawsuits against them; and that he found the unsolicited telemarketing calls at issue in this case to be an invasion of his privacy, a waste of his time, an interruption and distraction of the regular business of his day, and a frustrating annoyance. Further, Plaintiff states that he believes it is important to stand up for his rights and hold those who violate the TCPA to their obligations under the law. Plaintiff also states that he kept track of the calls at issue in this case and filed this lawsuit to hold Defendants accountable under the law, and to stand up for himself when his privacy has been invaded. *See Declaration of Plaintiff*, ¶¶ 9-14.

Clearly, Plaintiff has suffered an injury-in-fact sufficient to confer him with standing under Article III. Pursuant to the cases cited above, the receipt of telephone calls prohibited by the TCPA alone is sufficient to confer Article III standing to Plaintiff. Therefore, Defendants' Motion for Summary Judgment must be denied.

## IV.   **CONCLUSION**

Plaintiff has demonstrated that each of Defendants' arguments has failed and their Motion for Summary Judgment should be denied. A genuine issue of fact exists as to whether Defendants were so involved in the process of making the automated telemarketing calls Plaintiff received that they are deemed to have made those calls themselves. Defendant Montes testified during his deposition that he provided the "robo-calling" system used by his customers, and many of his customers were the same companies that placed the alleged illegal calls to Plaintiff. Montes has refused to comply with the subpoena for records that would help Plaintiff to prove the calls he received were placed Defendants' customers with Defendants' involvement. The CDA does not apply to the illegal conduct alleged in this case and does not shield Defendants from liability for violations of the TCPA.  Finally, Plaintiff does have Article III standing to pursue his claims in

15

this case. Therefore, as many genuine issues of material fact exist, Plaintiff respectfully requests the Court deny Defendants' Motion for Summary Judgment.

Wherefore, Plaintiff respectfully request this Honorable Court deny Defendants' Motion for Summary Judgment or, in the alternative, grant Plaintiff appropriate relief as allowed by Fed. R. Civ. P. 56(d), and grant such further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

CRAIG CUNNINGHAM

By:   /s/ David B. Levin
     Attorney for Plaintiff
     Illinois Attorney No. 6212141
     Admitted to Practice in Western District of
     Wisconsin
     Law Offices of Todd M. Friedman, P.C.
     333 Skokie Blvd., Suite 103
     Northbrook, IL 60062
     Phone: (224) 218-0882
     Fax: (866) 633-0228
     dlevin@toddflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on February 15, 2019, a copy of the foregoing Response in Opposition to Defendants' Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ David B. Levin
Attorney for Plaintiff