IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CRAIG CUNNINGHAM,

      Plaintiff,
 v.

MICHAEL MONTES JR., TOLLFREEZONE.COM,
INC., MYDATAGUYS.COM, LLC,
PODMUSICGEAR.COM, INC., and
EMAILMYVMAIL.COM, INC.,

      Defendants.

OPINION and ORDER

16-cv-761-jdp

---

Plaintiff Craig Cunningham alleges that Michael Montes and several of his businesses made robocalls that violate the Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227). Montes operated a telemarketing service, TollFreeZone.com, Inc., through which clients could run telemarketing campaigns.

Defendants move for summary judgment. No one disputes that businesses who were TollFreeZone.com clients made unsolicited robocalls to Cunningham's cell phones and that those calls violated the TCPA. The primary question now before the court is whether Montes and TollFreeZone.com can be held liable for those calls.

The court will grant summary judgment for defendants MyDataGuys.com, LLC, PodMusicGear.com, Inc., and EmailMyVmail.com, Inc., because Cunningham does not dispute that those entities were not involved in Montes's telemarketing business. But the court will otherwise deny the motion. Cunningham has adduced evidence that would support an inference that the illegal robocalls were made through TollFreeZone.com. And, under an FCC ruling from 2015, one who is closely involved in the placing of a specific call can be deemed to have made that call, and thus be liable for the TCPA violation. In this case, Cunningham has

adduced evidence that Montes was sometimes closely involved in executing his clients' telemarketing campaigns, and that he knew his clients made illegal robocalls. Thus, whether Montes and TollFreeZone.com are liable for the calls made to Cunningham depends on genuinely disputed facts.

Defendants also seek summary judgment on the grounds that Cunningham lacks standing to sue and that they are shielded from liability by § 230 of the Communications Decency Act. The court rejects these contentions as well.

UNDISPUTED FACTS

Cunningham has just filed a motion seeking sanctions for defendants' spoliation of evidence. Dkt. 151. The court will consider that motion after it is fully briefed, and it has no direct effect on the court's decision on summary judgment. But at this point, it appears to be undisputed that Montes has not preserved documentation of the telemarketing campaigns that he ran for TollFreeZone.com clients during the relevant period. Accordingly, as it considers defendants' summary judgment motion, the court will not hold the absence of that documentation against Cunningham. As the non-moving party, Cunningham is entitled to the benefit of all reasonable inferences drawn from the evidence before the court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The following facts are undisputed, except where noted.

### A. The parties

Craig Cunningham is a prolific filer of TCPA litigation. Since 2006, he has filed more than 150 lawsuits, 37 of which were pending during the litigation of this suit.

Defendant Michael Montes has owned and operated several businesses, including each of the four entities named as defendants in this suit. Defendant TollFreeZone.com, Inc. is a now-defunct California company that offered customers access to an auto-dialing server operated by a third party. TollFreeZone.com had no other employees, so all of its activities were performed by Montes himself.

Defendant MyDataGuys.com, LLC was a Nevada company that sold targeted phone number lists to customers. Although MyDataGuys.com was involved in the telemarketing business generally, it had nothing to do with the calls placed to Cunningham. The other two defendants, PodMusicGear.com, Inc. and EmailMyVmail.com, Inc. have no apparent involvement with the telemarketing industry. PodMusicGear.com, Inc. was a Delaware company that Montes created for the purpose of selling hats with embedded headphones. EmailMyVmail.com, Inc. is a Nevada company that Montes created for the purpose of offering customers an application that would translate voicemail messages into emails.

### B. Defendants' auto-dialer services

Montes provides robocalling, predictive dialing, and virtual telemarketer services to customers seeking to engage in high-volume telemarketing operations. Robocalling systems enable users to place many calls in a short period of time, either in randomized order or sequentially through a list of numbers. Virtual telemarketer services permit users to place telemarketing calls that play prerecorded messages for call recipients. And predictive dialing

capabilities allow users to maximize the odds that a live telemarketer will be available to take the call if a recipient answers the phone.

During the period relevant to this litigation, Montes provided these services through TollFreeZone.com, Inc. Customers would sign up for Montes's services by filling out a form on the TollFreeZone.com, Inc. website, www.autodialer123.com. To submit the form, customers had to verify that they agreed to the TollFreeZone.com terms of use, which included abiding by all federal and state laws in making auto-dialed calls, including the TCPA. Montes would then provide customers with a user ID, password, and online training videos that he had created about how to use the auto-dialing system. The auto-dialing platform itself was furnished by a third party, the Panamanian company Technologic, Inc., which operated under the name "dialer.TO."

Once customers had access to the platform, they were able to upload a recorded message and phone number lists into the system and launch auto-dialing campaigns themselves. Customers were also able to "scrub" their phone number lists so that numbers on the federal Do-Not-Call registry would be removed. Many of Montes's customers were political entities, but about a third were commercial entities.

Montes's personal involvement in the telemarketing campaigns run through TollFreeZone.com varied. Customers could, and often did, call him with questions about using the auto-dialing platform. Sometimes, Montes would do "all the legwork" for his clients, meaning he would load their data and their recordings into the system and then "hit send or start." Dkt. 127 (Montes Dep. 101:24–25; 102:2; 117:13–24). He would sometimes assist in writing the prerecorded message. *Id.*, at 120:13–121:8. But Montes did not personally make phone calls or lend his voice to prerecorded messages, and generally he did not concern himself

4

with the content of customers' calls. He also did not monitor his customers to ensure that they were complying with the TCPA.

### C. Phone calls received by Cunningham

Between 2015 and 2018, Cunningham received numerous unsolicited, non-emergency telemarketing calls. He kept track of those calls in a log, where he would record the following information: the date of the call; which of his three cell phone numbers had been dialed; the number from which the call was placed; and, in some cases, details about the person or company calling. *See* Dkt. 130-4, at 22–24, 28, 30–38. He made audio recordings of some of the calls. *Id.* at 39–40.

Some of the calls came from customers of Montes: Jerry Maurer, Rich Holman, and representatives of "8 Figure Dream Lifestyle," "Elite Marketing Alliance," "Enagic," and "Tidom." Montes confirmed that each of these had been customers of his at some point. Cunningham also received calls from representatives of "Elite Profit System" and "Secret Success Machine a/k/a SSM." Dkt. 139, ¶ 23. Montes testified that he could not remember whether those companies were customers of his at his deposition, but they are among the entities listed in a drop-down menu on the autodialer123.com website.

ANALYSIS

This case concerns the TCPA's prohibition on unsolicited robocalls to cell phones. It is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action for one who

5

receives prohibited robocalls: "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" may bring suit and recover actual or statutory damages. 47 U.S.C. § 227(c)(5).

Defendants do not dispute that Cunningham received calls that violate the TCPA or that he received more than one in a 12-month period. But defendants contend that they are nevertheless entitled to summary judgment on several grounds. Defendants' two main arguments are (1) that Cunningham cannot show that any of the calls he claims violate the TCPA came through Montes's website, and (2) even if the calls did come though Montes's website, neither Montes nor TollFreeZone.com actually made the offending calls and thus they cannot be liable for them under the TCPA.

The court will grant summary judgment if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. To avoid summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* A party may not simply rely on the allegations in its pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [its] favor." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996). Summary judgment is sometimes referred to as "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999).

### A. Injury-in-fact

Before addressing the merits, the court must address the threshold question of jurisdiction. *See McCready v. White,* 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit."). Specifically, defendants contend that Cunningham's suit must be dismissed because Cunningham has suffered no "injury in fact" and thus lacks Article III standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016). Defendants' theory relies on the facts that Cunningham is an experienced TCPA plaintiff who has filed more than 150 lawsuits and has knowingly declined to place his phone numbers on the federal do-not-call registry. From this, defendants infer that Cunningham actually welcomes robocalls, so he has suffered no real invasion of his privacy.

But Cunningham's participation in other TCPA suits, even a large number of them, does not mean that he has suffered no real injury. As the court of appeals put it in *Murray v. GMAC Morg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006), there is no support for the idea that one whose rights have been violated by 50 different persons should be allowed to sue only a few of them. The court rejected the view that a "professional plaintiff" was not a proper party, relying on cases such as *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374–75 (1982), in which the Court held that "testers" (individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices) have standing to challenge discriminatory housing practices. Defendants cite no authority for the view that a plaintiff lacks standing to sue if he fails to take affirmative steps to avoid injury.

Defendants cite *Telephone Science Corporation v. Asset Recovery Solutions, LLC*, No. 15-cv-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016), but that case is distinguishable for two reasons. First, it is about statutory standing, not Article III standing. Second, and more important, the court in *Telephone Science* found that the plaintiff maintained thousands of phone numbers specifically for the purpose of inviting robocalls. 2016 WL 4179150, at *15; *see also Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) (dismissing TCPA claim for lack of standing when plaintiff admitted to having purchased 35 cell phones for the purpose of receiving calls that violate the TCPA). In this case, Cunningham denies that he purchased his three cell phones for the purpose of filing TCPA lawsuits. Dkt. 140, ¶ 9. Defendants have cited no contrary evidence.

To be sure, Cunningham has diligently tracked the robocalls received on his three phones, and he has filed suit in response. His response to the invasion of his privacy is precisely what is authorized by 47 U.S.C. § 227(b)(3). Defendants are not entitled to summary judgment on the standing issue.

### B. Whether the prohibited calls came through TollFreeZone.com

Defendants say that "there is no evidence any of the calls to [Cunningham] were placed through the website." Dkt. 142, at 7. Defendants are correct that Cunningham has no direct evidence linking any specific call to TollFreeZone.com. But the lack of direct evidence might well be due to Montes's failure to preserve records related to specific telemarketing campaigns.

The court need not stay a decision on summary judgment pending resolution of Cunningham's motion for sanctions because, even without direct evidence, Cunningham has sufficient circumstantial evidence that the calls he received came through Montes's website. Cunningham received robocalls from Jerry Maurer, Rich Holman, and representatives of "8

Figure Dream Lifestyle," "Elite Marketing Alliance," "Enagic," and "Tidom." Montes concedes that these were all clients of TollFreeZone.com. Cunningham also received robocalls from representatives of "Elite Profit System" and "Secret Success Machine a/k/a SSM." Although Montes could not remember if either of those programs ran telemarketing campaigns though TollFreeZone.com, those entities showed up on the TollFreeZone.com website, suggesting that they were also Montes's clients.

Montes attempts to counter this circumstantial evidence with two facts: there are other telemarketing platforms available, and TollFreeZone.com did not require its clients to commit to TollFreeZone.com exclusively. Montes is correct that it is conceivable that TollFreeZone.com clients might also make calls through other telemarketing platforms. But Montes has not adduced any evidence from any TollFreeZone.com clients showing that they did in fact use other telemarketing platforms from 2015 through 2018.

A reasonable jury could infer, based on Cunningham's circumstantial evidence, which Montes has not significantly rebutted, that the robocalls Cunningham received from defendants' clients came through defendants. Defendants are not entitled to summary judgment on this ground.

### C. Whether Montes or TollFreeZone.com "made" the prohibited calls

Defendants contend that they cannot be held liable under the TCPA because the TCPA robocall prohibition applies only to those who "make" calls. 47 U.S.C. § 227(b)(1)(A). Neither Montes nor TollFreeZone.com were themselves telemarketers; they simply provided a service through which clients could access an auto-dialer system. It was, the argument goes, the TollFreeZone.com clients who actually made the prohibited calls.

But the scope of liability under the TCPA is broader than defendants suggest. Congress authorized the FCC to proscribe rules implementing the TCPA. 47 U.S.C. § 227(b)(2). The question of who can be held liable for violations of the TCPA was addressed extensively in 2015. *See Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7890 (2015) (which we will refer to as the 2015 FCC Order). Defendants describe the 2015 FCC Order as "much criticized," Dkt. 142, at 3, but it is binding precedent here.[1] *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446–50 (7th Cir. 2010) (citing 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a)).

Section III.A.2. of the 2015 FCC Order addressed the question of who qualifies as the "Maker of a Call." The FCC framed the analysis by citing Congress's intent in enacting the TCPA "to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that auto-dialed and prerecorded calls generate . . . regardless of the content or the initiator of the message. . . ." 2015 FCC Order, at 7978 ¶ 29. The FCC described the order as the agency's attempt to "account for changes in calling technology that inure to the benefit of consumers while fulfilling the intent of Congress to prohibit nuisance calls that cause frustration and harm." *Id*.

The 2015 FCC Order reiterated previous rulings stating that responsibility under the TCPA lies with those who "make" or "initiate" prohibited calls. *Id.* at 7890 ¶ 29 (quoting *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶¶ 26–27 (2013)). But the 2015 FCC Order

---

[1] Although some sections of 2015 FCC Order were overturned, *see ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018), that ruling did not affect the provisions at issue in this case.

acknowledged that the TCPA does not define "make" or "initiate," nor had the FCC set out the factors to consider in making the determination. *Id*.

The 2015 FCC Order set out to clarify the question of who "makes" a call for purposes of TCPA liability. It states that one can violate the TCPA either by "taking the steps necessary to physically place a telephone call," or by "being so involved in the placing of a specific telephone call as to be deemed to have initiated it." *Id.* at 7890 ¶ 30 (quoting *DISH Network*, 28 FCC Rcd. at 6583 ¶ 27). And in making this determination, the adjudicator must "look to the totality of the facts and circumstances surrounding the placing of a particular call." *Id*. Factors relevant to this analysis include:

1) The extent to which the defendant controls the call's message

2) The extent to which the defendant controls the timing or initiation of the call

3) The extent to which the defendant controls who receives the call

4) Whether the service is "reactive in nature," meaning that it places calls in a manner that is arranged by the customer rather than the defendant

5) The extent to which the defendant "willfully enables fraudulent spoofing of telephone numbers" by offering that functionality to clients

6) The extent to which the defendant "assists telemarketers in blocking Caller ID" by offering that functionality to clients

7) Whether a defendant "who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes"

*Id.* at 7980–84 ¶¶ 30–37. The list of factors is not exclusive. *Id*. at ¶ 30.

The "totality of the circumstances" approach set out in the 2015 FCC Order will not provide easy answers in close cases. But it makes one thing clear: a provider of auto-dialing

services cannot blithely sit back and blame his customers for any TCPA violations that result from their use of his service. At a higher level of abstraction, two principles emerge from the 2015 FCC Order: TCPA liability attaches to those who control or are deeply involved in making specific calls, and to those who knowingly allow an auto-dialing system to be used to make prohibited robocalls.

The court turns now to the question of whether Cunningham has adduced evidence to support his claim that Montes and TollFreeZone.com should be liable for the prohibited robocalls he received.

In his opposition brief, Dkt. 137, Cunningham focuses on Montes's purported control over and involvement with the calls made through TollFreeZone.com. But he doesn't address the factors identified in the 2015 FCC Order that bear on the extent of defendants' control, likely because those factors would not be helpful to him. Montes did not usually control the messages his customers conveyed, or choose the timing of their calls or what numbers they dialed.

Nevertheless, Cunningham contends that four facts demonstrate that Montes was so involved in the placing of illegal calls as to be deemed to have initiated them himself. First, Montes assisted customers in setting up accounts through which they could access the third-party auto-dialing platform. Second, Montes provided extensive technical assistance and training materials to his customers. Montes testified that he would field "[p]robably a dozen" support calls per day from customers with questions about how to navigate the auto-dialing platform. Dkt. 127 (Montes Dep. 55:6). For some customers, he would conduct live trainings online. He also recorded "a myriad of videos on how to use the system," *id.* 41:14–15, with titles like "How to Start and Stop a Campaign" and "How to Extract Report Data to Migrate."

Dkt. 139, ¶¶ 16, 17. Third, without Montes, or some other provider of auto-dialer services, clients wouldn't be able to place such a high volume of automated calls conveying prerecorded messages. *Id.* ¶ 18. Fourth, Montes would sometimes actually set up and run the dialing campaigns for some customers, loading their call lists and audio files and then launching the campaign by "hit[ing] send or start." Dkt. 127 (Montes Dep. 117:24).

The first three of these facts add nothing to Cunningham's case. They show only that Montes set up and operated a telemarketing platform, and showed his clients how to use it. The TCPA contains many exceptions, so not all auto-dialed calls conveying prerecorded messages are illegal. Montes testified that, during the time at issue in this lawsuit, about 70 percent of his customers were political. *Id.* 99:17–100:9. Political calls to landlines do not violate the TCPA, *see* 47 C.F.R. § 64.1200(c)(3)(ii), so there were conceivable legal uses for Montes's telemarketing platform. Cunningham would have to show more than Montes's normal operation of a telemarketing platform to establish his liability under the TCPA.

The fourth fact, however, supports Cunningham's case. Cunningham adduces evidence that Montes himself actually set up and ran some of his clients' campaigns from start to finish. And, in some cases, Montes even wrote the scripts for the prerecorded calls. *See* Dkt. 127 (Montes Dep. 120:13–121:8). Montes contends that he exercised this level of control only for his political customers. But Montes's testimony on this point is equivocal. In response to a question about whether he ran or was involved in commercial telemarketing campaigns for his clients, he said "No, not usually." *Id.* 118:10; 118:18. And in response to a question about whether he ever wrote scripts for commercial customers, he said "I might have." *Id*. 121:6. Defendants cannot establish their entitlement to summary judgment with such equivocal testimony.

There is also evidence that Montes knowingly allowed his clients to use his website to make prohibited robocalls. Evidence that Montes had been warned that his website was "being used unlawfully by its clients" but nonetheless "allow[ed] such usage to continue after this warning" would be "a possible indicator that [he was] actively participating in the making or initiating of the calls at issue." 2015 FCC Order, 28 FCC Rcd. at 7890 ¶ 30 n.110.

In his deposition, Montes made statements that raise genuine issues of material fact about whether he knowingly allowed his customers to use TollFreeZone.com's platform for unlawful purposes. Montes repeatedly testified that he believed that the language in the autodialer123.com terms of use advising customers to abide by all federal and state laws absolved him of any legal liability for his customers' actions. *See, e.g.*, Dkt. 127 (Montes Dep. 27:23–28:2; 113:7–11). This shows at least that Montes was aware that an auto-dialing system could be used in an unlawful manner.

And Montes had actual knowledge that his clients' use of his system had drawn legal objections. He testified that he started blocking calls to four states after he learned about adverse regulatory activity (Indiana and Mississippi[2]), a legal judgment against him (Missouri), and Cunningham's litigiousness (Tennessee). *See id.* 65:2–67:12; 114:23–115:13. He also testified that he took no action to ensure TCPA compliance by his customers. *Id*. 112:19–23. These circumstances support an inference that Montes knew that his clients' campaigns violated that TCPA, and that he helped them avoid the consequences. And his blocking of calls to certain states demonstrates yet additional control over who his clients would call.

---

[2] In 2015, the Mississippi Public Service Commission imposed civil penalties of $440,000 on TollFreeZone.com for no-call violations. Montes testified that he didn't learn of this fine until 2018, and that it did not inform his decision to block calls in Mississippi. *See id.* 64:18–24, 67:3–9.

14

Cunningham has adduced evidence from which a reasonable jury could conclude that Montes had significant control over, and knowledge of, his clients' robocalls. Defendants are not entitled to summary judgment on the basis that they cannot be deemed to have "made" or "initiated" the prohibited calls.

### D. Section 230 of the Communications Decency Act

Defendants contend that Montes and TollFreeZone.com are immune from liability under the Communications Decency Act of 1996. As relevant here, the Communications Decency Act bars any suit against an "interactive computer service" if that suit seeks to treat the service as "the publisher or speaker of any information provided by another information content provider."[3] 47 U.S.C. § 230(c)(1). So, for example, one could not sue Craigslist under the Fair Housing Act simply because some third parties used Craigslist to post discriminatory housing ads; Craigslist in this instance was a passive messenger, not a publisher or speaker, so it can't be held liable for illegal posts that its users might make. *See Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), *as amended* (May 2, 2008). Defendants argue that, by the same logic, Montes and TollFreeZone.com can't be held liable for the activities of third-party telemarketers who make auto-dialed calls using their services.

Defendants cite no cases concluding that § 230(c)(1) shields a provider of telemarketing services from TCPA liability, and the court has found none. To the contrary, *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959 (N.D. Cal. 2016), suggests that § 230(c)(1) would not apply to TCPA

---

[3] The statute defines "interactive computer service" broadly, as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2).

liability because the harm addressed by the TCPA is not related to the content of the robocalls. The court's analysis crystallizes the point nicely:

> To analogize to a more traditional publishing platform, if someone delivers newspapers containing false gossip, and the person who is the subject of the gossip sues the delivery person for defamation, that lawsuit seeks to treat the delivery person as a publisher. But if the delivery person throws an unwanted newspaper noisily at a door early in the morning, and the homeowner sues the delivery person for nuisance, that suit doesn't seek to treat the delivery person as a publisher. The suit doesn't care whether the delivery person is throwing a newspaper or a rock, and the suit certainly doesn't care about the content of the newspaper. . . . It merely seeks to stop the nuisance. The same is true of this lawsuit regarding unwanted tweets sent by text . . . .

194 F. Supp. 3d at 967. In other words, the TCPA holds purveyors of illegal robocalls liable not as publishers of objectionable content, but as tortfeasors who intrude on the privacy of others.

Even if § 230(c)(1) were available to telemarketing providers who did not exercise control over their clients, that would be of no help to defendants in this case. As discussed above, Cunningham has adduced evidence that Montes exerted control over his clients' use of TollFreeZone.com's telemarketing platform. If this is so, then Montes would not be able to show that TollFreeZone.com was a neutral conduit for his clients' messages, such that he would be entitled to immunity as an internet service provider. The Communications Decency Act is not a basis for summary judgment for defendants.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 121, is GRANTED with respect to defendants MyDataGuys.com, LLC, PodMusicGear.com, Inc., and

EmailMyVmail.com, Inc. Those defendants are DISMISSED from the suit. The motion is otherwise DENIED.

Entered May 2, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge