IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CRAIG CUNNINGHAM,

                Plaintiff,

v.                                                    OPINION and ORDER

MICHAEL MONTES JR. and                         16-cv-761-jdp
TOLLFREEZONE.COM, INC.

                Defendants.

---

Plaintiff Craig Cunningham sued defendant Michael Montes and his telemarketing company, TollFreeZone.com, Inc., for violations of the Telephone Consumer Protection Act (TCPA). TollFreeZone.com is an internet platform that allows Montes's customers to make robocalls, using technology provided by a third party outside the United States. Under the TCPA, commercial robocalls are generally prohibited unless the recipient has consented to receive them. Cunningham has gotten a lot of commercial robocalls, which he diligently logged, and he thinks that a lot of them came from Montes's company. The court provided a detailed factual background in the decision on summary judgment, Dkt. 154, but those details aren't necessary for the present purpose, which is to decide whether enhanced damages are appropriate.

After a two-day trial, the jury found that Montes and TollFreeZone.com had violated the TCPA with 21 calls to Cunningham's cell phones. Dkt. 200. Montes was TollFreeZone.com's sole owner, and TollFreeZone had no other employees, so the court will use "Montes" as a shorthand for both defendants. Cunningham asserted no actual losses, but each violation entitles Cunningham to $500 in statutory damages, for a total of $10,500.

Cunningham now moves the court for an award of enhanced damages. Dkt. 205. The TCPA authorizes up to treble damages for willful or knowing violations, although the criteria for awarding enhanced damages are not clearly established. For reasons explained below, the court concludes that enhanced damages are available for reckless violations of the TCPA. The court finds that Montes recklessly violated the TCPA and that an award of treble damages is appropriate in this case.

## ANALYSIS

### A. TCPA standard for enhanced damages

The TCPA, codified at 47 U.S.C. § 227, gives people who receive illegal robocalls a private right of action. § 227(b)(3). A successful claimant can recover the greater of any actual losses or $500 in statutory damages for each illegal call. § 227(b)(3)(B). Section 227(b)(1)(A)(iii) of the TCPA—the provision Montes violated in this case—imposes strict liability; the plaintiff need not prove any intent by the defendant. But enhanced damages are available for willful or knowing violations:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

§ 227(b)(3). Neither the TCPA nor the FCC regulations related to it define or explain what is required for a willful or knowing violation of the TCPA. The Court of Appeals for the Seventh Circuit hasn't interpreted what willful and knowing means in the context of the TCPA either.

Cunningham contends that enhanced damages are available so long as Montes's actions in making the call were intentional; there should be no requirement that Montes knew that his

2

actions would violate the TCPA. Dkt. 205, at 4. Montes contends that enhanced damages are not available unless the defendant "know[s] its conduct violates the TCPA and continue[s] to act in violation of the statute." Dkt. 206, at 3. Neither party attempts to distinguish the meaning of "willfully" and "knowingly," but the court will focus on what is required to prove a willful violation because that is the standard with the clearest application to Montes's conduct.

Montes bases his argument primarily on *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015), which he contends requires proof that the defendant "knew it was violating the law when placing a call." Dkt. 206, at 1. That's incorrect. *Lary* interpreted § 227(b)(3) to require knowledge of the underlying facts that constitute each element of the violation in question: "The requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute. For example, to violate section 227(b)(1)(A)(i), a defendant must know that he is using an 'automatic telephone dialing system' to place a 'call,' and that the call is directed toward an 'emergency' line." *Id*. at 1107 (internal citations omitted). *Lary* doesn't provide useful guidance because the court didn't explain how it reached its conclusion.

Cunningham's argument rests on some district court TCPA decisions that relied on a general definition of the term "willful" as meaning only conscious or deliberate conduct. *See, e.g.*, *Sengenberger v. Credit Control Servs., Inc.*, No. 09C2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010). *Sengenberger* relied on a footnote in *Smith v. Wade*, a § 1983 case about punitive damages, in which the Supreme Court said that "'willfulness' did not mean intent to cause injury, but only voluntary action." 461 U.S. 30, 40 n.8 (1983). But *Smith* provides meager guidance because the Court's decision had nothing to do with the meaning of the term "willful" and the Court wasn't construing the term in the context of a statute. Rather, the Court was

3

considering 19th century meanings of various terms associated with the standard for awarding punitive damages, concluding that there was "substantial variation" in the meaning of those terms. *Id.*

*Sengenberger* also quoted statutory language from another part of Title 47, 47 U.S.C. § 312(f)(1), which says that "willful, when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act." But § 312 is a statute about the "[r]evocation of [a radio] station license or construction permit." There is no indication in that statute that the definition of willful is intended to have a broader application. Because "willfully" is "a word of many meanings," its construction "is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998). So the construction of "willfully" in the TCPA can't be decided by the application of a single general definition, or definitions drawn from unrelated and dissimilar contexts.

Neither the parties nor the cases they cited engaged the text of the statute, as the court must. "Statutory interpretation begins with the text of the statute, and it ends there if the meaning is plain." *Dorbor v. United States*, 379 F. Supp. 3d 765, 768 (W.D. Wis. 2019). The text of § 227(b)(3) is not so plain that it is decisive, but it provides cues. The statute allows enhanced damages if the defendant "willfully or knowingly *violated* this subsection" or the FCC regulations interpreting it. This phrasing suggests that, to be willful or knowing, the defendant must be aware of the requirements in the TCPA: in terms of syntax, the adverbs "willfully" and "knowingly" modify the verb "violated," which suggests that it is the violation itself that must be willful or knowing, and not some underlying action by the defendant. This interpretation is reinforced by considering the alternative phrasings that Congress did not adopt. The statute does not say, for example, "if the court finds that the defendant willfully or knowingly made a

4

call described in paragraph (b)(1)." The statute could be clearer, but the text suggests that awareness of the requirements of the TCPA is a prerequisite to a willful violation of the TCPA.

That is not to say that oblivious violators of the TCPA are off the hook. The old maxim "ignorance of the law is no excuse" is well-established in criminal law, and it also applies under the TCPA, at least to the question of liability. As noted above, section 227(b)(1)(A)(iii) imposes strict liability, so no intent is required. But the question before the court isn't whether Montes violated the TCPA; the jury decided that. The question is whether Montes "willfully violated" the TCPA.

Supreme Court case law also supports the view that a "willful violation" requires a showing that the defendant was on notice that his conduct could be unlawful. For example, in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 584–85 (2010), the Court observed that the term "willful violation" is "often understood in the civil context to excuse mistakes of law." *Jerman* cited *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–126 (1985), in which the Court held that a "willful violation" of the Age Discrimination in Employment Act requires a showing that the defendant "knew or showed reckless disregard" for whether its conduct was prohibited by the statute. The Supreme Court adopted the same construction of a "willful violation" under the Fair Labor Standards Act. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). These cases support the view that a "willful violation" requires more than just intentional conduct, as Cunningham contends.

But a willful violation does not require proof that the defendant had actual knowledge that he was violating the law, as Montes contends. Willful violations include reckless ones as well as knowing or intentional ones. The principle is discussed thoroughly in *Safeco Insurance Co. of America v. Burr,* in which the Court held that "where willfulness is a statutory condition

5

of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." 551 U.S. 47, 57 (2007).

The *Safeco* approach makes practical sense in the TCPA context. Automated dialing is generally a mass operation, so the caller will not typically have specific knowledge about the circumstances of each call. Enhanced damages should not apply to inadvertent errors, such as isolated data entry errors of an otherwise conscientious defendant. And enhanced damages *should* apply to defendants with actual knowledge of the circumstances underlying each violation. But given the scale of many autodialing operations, truly knowing violations will be rare. It would undercut the purpose of the TPCA if a robocaller could avoid enhanced damages simply by disclaiming actual knowledge of individual calls found to violate the TCPA.

In *Safeco*, the Court stated that recklessness in the civil context is shown if: (1) the defendant was aware of an "unjustifiably high risk" that he was violating the law; or (2) the risk was "so obvious" that the defendant should have known of the risk. 551 U.S. at 68–70. That is the standard that the court will apply to Montes's conduct. Because the court finds that Montes's violation was willful for reasons explained in the next section, it is unnecessary to decide whether the violation was also knowing.

## B. Montes willfully violated the TCPA

Cunningham adduces strong evidence that Montes recklessly disregarded the risk that TollFreeZone.com would violate the TCPA. Montes created TollFreeZone.com to provide his customers with access to a robocalling platform, so he was involved in a regulated business practice subject to strict oversight and enforcement through the TCPA. Montes was aware of the regulations: he testified that he knew the TCPA very well. Dkt. 204, at 19–20. Despite Montes's knowledge of the legal risks associated with the business he was running, he did not

monitor his customers to ensure that they complied with the TCPA, provide training about how to avoid violating the TCPA, or otherwise concern himself with what his customers were using his website to do.

Montes's main argument is that he did not know that his customers would violate the TCPA. According to Montes, most of his customers were political organizations, so the main TCPA prohibitions did not apply to them. *See* Dkt. 203, at 23. Montes conceded that he also had commercial customers, but Montes testified that they were "supposed to be calling businesses, because there's no law[] against calling businesses," or calling consumers who previously "contacted [the callers] and said they were, you know, interested in [their] product or whatever." Dkt. 204, at 16. Montes testified that he had declined some commercial business that he thought posed a risk of TCPA violations. But he cited only two specific examples (a "student-loan guy" and a "home-warranty guy," *id.*), he had no corroborating evidence, and he pointed to no policy, training, or any systematic effort to prevent violations.

Montes's head-in-the-sand approach to his commercial customers was all the more reckless in light of his knowledge that their conduct on his platform had drawn legal objections. In 2012, a default judgment for $73,000 was entered against TollFreeZone.com, based on a complaint for no-call violations brought by the attorney general of Missouri. Montes testified that he took no steps to look into what laws he was accused of violating or which customers were responsible for those calls. He made only two changes to his business practices as a result of the judgment—he blocked future calls to Missouri and let the corporate status of TollFreeZone.com, LLC lapse to prevent enforcement of the judgment. *Id.* at 52–53, 55. In 2015, the Mississippi Public Service Commission imposed civil penalties of $440,000 on TollFreeZone.com for no-call violations. (Montes says he didn't learn about this fine until a

7

2018 deposition, but he must have had an inkling that there was adverse regulatory activity because he decided to block customers from placing calls to Mississippi prior to that deposition. *See* Dkt. 126 (Montes Dep. 67:3–5.)) Again, other than blocking calls to Mississippi, Montes made no attempt to understand the basis for the penalty or to adjust his business practices to prevent future similar violations. Dkt. 204, at 54–55. These state enforcement actions did not directly involve the TCPA, but they involved closely related regulations of mass telephone operations, which Montes made no attempt to investigate or even understand.

Montes knew that robocalling was subject to regulation under the TCPA and that his customers' use of the TollFreeZone.com robocalling platform had drawn legal objections. But rather than taking measures to reduce the risk of TCPA violations, he simply vacated the jurisdictions where he faced legal penalties. Montes continued to give his clients unchecked use of his robocalling system. The court finds that Montes's TCPA violations were willful under § 227(b)(3).

## C. Treble damages are justified

The finding that Montes acted willfully does not require an award of enhanced damages. Rather, the court has the discretion to increase damages to an amount "equal to not more than 3 times" the $500-per-violation statutory damages. 47 U.S.C. § 227(b)(3).

Cunningham asks for treble damages. Montes says that treble damages aren't warranted for two reasons. First, Cunningham never asked Montes's customers to stop calling him. Montes cites a case in which a court declined to award enhanced damages in part because the plaintiff never affirmatively asked not to be contacted. *See KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019). But in that case, the defendant contended that he believed that the plaintiff had consented to receive faxes, and that its TCPA violations were

8

therefore inadvertent rather than willful or knowing. The plaintiff's conduct in that case was relevant to the reasonableness of defendant's belief. Montes cites no court that has considered a plaintiff's failure to affirmatively object or opt out to be an independent basis for declining to enhance damages.

Second, Montes says that treble damages aren't warranted because he had not previously been sued for TCPA violations. Montes cites two cases in which courts have discussed a lack of prior litigation history in declining to award enhanced damages. *See Ellis v. Energy Enter. USA, Inc.*, No. 17-cv-497, 20178 WL 6816112, at *6 (N.D. Cal. Nov. 20, 2018), *report and recommendation adopted sub nom. Ellis v. Energy Enter. USA, Inc.*, No. 17-cv-497, 2018 WL 6719163 (N.D. Cal. Dec. 21, 2018); *Drew v. Lexington Consumer Advocacy*, No. 16-cv-200, 2016 WL 9185292, at *11 (N.D. Cal. Aug. 11, 2016), *report and recommendation adopted sub nom. Drew v. Lexington Consumer Advocacy, LLC*, No. C 16-00200, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016). But those cases involved default judgments. The courts noted that the plaintiffs had failed to adduce evidence of prior TCPA litigation involving the defaulting defendants, suggesting that such a history would be one way to support willfulness at the default judgment stage. These cases do not suggest that TCPA litigation history is a prerequisite to an award of enhanced damages.

Montes's recklessness with respect to his legal obligations continued during this litigation. The court sanctioned Montes for the destruction of call records that Cunningham had requested in discovery. Dkt. 189, at 2. Those call records would have helped Cunningham establish the number of TCPA violations. Ultimately, the number of calls for which Montes was found liable is relatively small, and the court finds that it is likely that Montes ultimately

9

benefited from his discovery abuse. Even without the discovery abuse, his reckless conduct in operating his business warrants a strong sanction.

The court is persuaded that treble damages are justified. Montes has a history of cavalier disregard for the law and deliberate avoidance of accountability for his robocalling activities. Because of the small number of violations found by the jury, an award of treble damages does not impose a draconian punishment on Montes and it does not give Cunningham an unreasonable windfall. The court will treble the damages award and enter judgment in the amount of $31,500.

## ORDER

IT IS ORDERED that plaintiff Craig Cunningham's motion for enhanced damages and entry of judgment on the jury verdict, Dkt. 205, is GRANTED. The clerk of court is directed to enter judgment for plaintiff in the amount of $31,500 and close this case.

Entered February 6, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge